Edwin B. SEWARD, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

No. 24553.

United States Court of Appeals
Fifth Circuit.

March 20, 1968.

Larry Klein, Miller, Cone, Owen, Wagner, Nugent & Johnson, West Palm Beach, Fla., for appellant.

Richard J. Thornton, John H. Wahl, Jr., Miami, Fla., for appellee, Walton, Lantaff, Schroeder, Carson & Wahl, Miami, Fla., of counsel.

Before TUTTLE and WISDOM, Circuit Judges, and HEEBE, District Judge.

WISDOM, Circuit Judge:

The question before us is whether an insurer is liable to one of its insureds for damages in excess of the limits of the insured's automobile liability policy for having wrongfully refused to defend the insured in a suit that resulted in a judgment exceeding the amount of the policy. The insurer argues: No—not unless there is an offer of settlement the insurer might have accepted, or used as the basis for negotiation of a settlement, lower than the amount of the judgment. *Erie* binds us to Florida law. Unfortunately, the Florida courts have not decided the question as it is presented within the factual context of this case.

The closest case in point is American Fidelity Fire Insurance Co. v. Johnson, Ct.App.Fla.1965, 177 So.2d 679, cert. denied S.Ct.Fla.1966, 183 So.2d 835, in which there was an offer of settlement which the insured never communicated to the insurer. Both parties rely upon this case. Indeed, in his original brief the appellant was content to cite and discuss only *American Fidelity.* The district court relied on the rationale that guided the Florida court, but distinguished *American Fidelity* on the ground that there was an offer of settlement in that case. The district court granted judgment for Seward, the insured, but only for an amount equal to the face amount of the policy. 261 F.Supp. 806. State Farm did not appeal, foreclosing the issue of its liability for the amount of the policy. We affirm.

Edward B. Seward was the named insured under a policy of automobile liability insurance issued by State Farm Mutual Insurance Co. in the amount of $10,000. September 28, 1962, Seward's car collided with another car on the Florida Turnpike. Robert E. Lackey, who was also in Seward's automobile, died as a result of the accident. There was no evidence as to who was driving at the time of the accident; allegedly, Seward was injured so badly that he did not know who was driving.[1] Seward and Lackey were both employees of the Florida Turnpike Authority and were acting within the course of their employment when the accident occurred.

November 5, 1962, Lackey's widow filed a wrongful death action against Seward in the Circuit Court for Palm Beach County. Seward promptly transmitted the complaint to State Farm. State Farm wrote Seward November 6 and again November 26, 1963, to inform him that he was not covered under his policy and that State Farm would not

1. The parties to this appeal stipulated that neither knew who was driving at the time of the accident. Seward contends therefore that the question of his liability was by no means clear; that if State Farm had at least provided a defense (under a reservation of rights) it could have prevented the default from being entered; that perhaps the insured would have been entitled to a directed verdict at the trial.

defend the action.[2] December 3, 1963, a default judgment was entered against Seward.[3] After the entry of this judgment, Seward engaged a lawyer to represent him.[4] February 11, 1964, the case was tried on the issue of damages. The court granted judgment in Mrs. Lackey's favor in the amount of $57,000.

March 15, 1965, Seward sued State Farm in the Circuit Court to recover the amount of the judgment awarded against him, interest on the judgment, and attorneys' fees. The complaint alleged that State Farm "wrongfully breached its contract" to defend; that it was "reasonably foreseeable that such breach of contract * * * could likely result in * * * a judgment * * * substantially above the limits of cover-age" provided by the policy. State Farm removed the suit to the United States District Court on the ground of diversity of citizenship.

The critical fact in this case is that Mrs. Lackey made no offer of settlement to Seward or to State Farm. The parties to this suit so stipulated.

The district court found it was "crystal clear that State Farm acted without justification in denying coverage to Seward and that it acted wrongfully in refusing to defend the action brought against him by Mrs. Lackey". The court observed that State Farm's "rejection" of its "contractual duty to defend Seward" was a "shocking disregard of its obligations under the very policy that it meticu-

---

2. The policy defined an insured as including "(4) * * * any * * * organization legally responsible for the use [of the automobile] by an insured. * * * *" The Florida Turnpike Authority therefore was an insured. State Farm invoked one of the exceptions to coverage provided: "This insurance does not apply under: * * * (f) coverage A, to bodily injury of any employee of the insured arising out of and in the course of the insured's employment. * * * *" The district court held: "The inapplicability of the above clause is brought into sharp focus when the word INSURED is stricken, as it appears both times in said clause, and first the word SEWARD is inserted and then the word TURNPIKE is inserted.

(a) When SEWARD, the named insured, is inserted in place of the word INSURED, clause (f) reads as follows:

"(f) coverage A, to bodily injury of any employee of SEWARD arising out of and in the course of SEWARD's employment * * * *"

It is stipulated that Lackey was not the employee of Seward; both were in fact employees of the Turnpike Authority. If the word INSURED referred to Seward, clause (f) would be therefore inapplicable.

(b) When the word TURNPIKE, an insured under the policy, is inserted in place of the word INSURED each time, clause (f) appears as follows:

"(f) coverage A, to bodily injury of any employee of the TURNPIKE arising out of and in the course of the TURNPIKE's employment.

The accident involving Seward's automobile could not have occurred in the course of the TURNPIKE's employment because the Turnpike is only an employer, not an employee. Therefore when TURNPIKE is inserted in place of INSURED each time, it again readily appears that clause (f) has no application in this matter. This analysis makes it crystal clear that State Farm acted without justification in denying coverage to Seward and that it acted wrongfully in refusing to defend the action brought against him by Mrs. Lackey.

3. Mrs. Lackey filed a praecipe for entry of a default judgment November 30, 1962, which was entered December 3, 1962. Seward was in the hospital at the time.

4. Seward's lawyer took no steps to take advantage of the liberal Florida procedure for setting aside default judgments. See Rule 1.6 of the Florida Rules of Civil Procedure. He attended the trial on the issue of damages, but did not participate in the proceeding. He testified: "I felt this way, I felt that State Farm could have defended this under a reservation if they had desired to do so. They chose not to do so. They gave this man a blank denial of coverage and I thought that State Farm had a great deal more at stake than my client because my client had little or no assets and that if State Farm did in fact make an error in denying coverage that they would eventually rectify that error in one manner or another."

lously drafted". On the plaintiff's motion for a summary judgment, the district court, *"regretfully"* held that in view of the Florida cases, including *American Fidelity,* it could not hold State Farm liable for more than the limits of the insurance contract.

This Court has said, speaking generally in a case arising in Mississippi, "conceding, for present purposes, that the policy was in force at the time of the accident, and that the company breached its contract in failing and refusing to investigate and defend the claim, it does not necessarily follow that the company was negligent, acted in bad faith, or committed any tort, in breaching its contract." Fidelity & Casualty Co. of N. Y. v. Gault, 5 Cir. 1952, 196 F.2d 329, 330. However, in Florida, as in many states, it is well established that an insurer who undertakes to defend but in bad faith refuses to settle a claim within the policy limits thereby subjects itself to liability for any excess over the policy limits that may be recovered. Dotschay v. National Mutual Ins. Co., 5 Cir. 1957, 246 F.2d 221, 222; American Fidelity & Casualty Co. v. Greyhound Corp., 5 Cir. 1956, 232 F.2d 89, 93; Tully v. Travelers Ins. Co., N.D.Fla.1954, 118 F.Supp. 568, 569; American Fidelity Fire Ins. Co. v. Johnson, supra at 681; American Fire & Casualty Co. of Greenville v. Davis, Fla.App.1962, 146 So.2d 615, 617; Canal Ins. Co of Greenville v. Sturgis, Fla.App. 1959, 114 So.2d 469, 115 So.2d 774, Fla. 1960, 122 So.2d 313; Auto Mutual Indemnity Co. v. Shaw, 1938, 134 Fla. 815, 184 So. 852, 859. This Court has summed up the Florida law: "As we construe the law of Florida, absent conduct amounting to 'bad faith' or negligence 'to the extent of bad faith', the policy limits govern insurer's liability for failure to defend." Hendry v. Grange Mutual Casualty Co., 5 Cir. 1967, 372 F.2d 222. See also Burton v. State Farm Mutual Automobile Insurance Co., 5 Cir. 1964, 335 F.2d 317.

Loose generalizations may be found in secondary sources which state or imply that an insurer is held to strict liability for "any damages" sustained as a result of the breach of contract for failure to defend.[5] An examination of the cases, however, discloses that when an insurer is held liable for the excess over the policy, invariably there was offer to settle the initial claim. And invariably the insurer was either guilty of bad faith in refusing to accept a reasonable settlement within the policy limits or guilty of conduct tantamount to bad faith. Communale v. Traders and General Insurance Co., 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R. 2d 883, is a leading case on the subject. In discussing *Communale* in *American Fidelity,* the Florida court pointed out: In *Communale* the court made an important distinction between the refusal to defend and the refusal to settle within policy limits. 177 So.2d at 682. In *Communale* the court said:

"The decisive factor in fixing the extent of Traders' liability is not the refusal to defend; it is the refusal to accept an offer of settlement within the policy limits. Where there is no opportunity to compromise the claim and the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is ordinarily limited to the amount of the policy plus attorneys' fees and costs. Mannheimer Bros. v. Kansas Casualty & Surety Co., 149 Minn. 482, 184 N.W. 189, 191. In such a case it is reasoned that, if the insured has employed competent counsel to represent him, there is no ground for concluding that the judgment would have been for a lesser sum had the defense been conducted by insurer's counsel, and therefore it cannot be said that the detriment suffered by the insured as the result of a judgment in excess of the policy limits was proximately caused by the insurer's refusal to defend. Cf. Lane v. Storke, 10 Cal.

5. 14 Couch on Insurance 2d § 51:152 (1965); 7A Appleman on Insurance, § 4689 (1962); 7 Am.Jur.2d, Automobile Insurance § 167 (1963); Annot., 49 A.L.R.2d §§ 11, 15 (1956).

App. 347, 350, 101 P. 937. *This reasoning, however, does not apply where the insurer wrongfully refuses to accept a reasonable settlement within the policy limits."* (Emphasis supplied.)

In *American Fidelity* the insurer wrongfully refused to defend the insured in an action arising out of an automobile accident resulting in the death of one person and serious injury to another. The distinctive feature of the case is that during the course of the initial litigation the plaintiff made an offer of settlement within the policy limits of $10,000 but Johnson never communicated this offer to the insurance company. Johnson was unable to avail himself of the offer. The court granted a judgment against the insured for $21,000. In the suit by Johnson against American Fidelity the District Court of Appeal distinguished *Mannheimer,* cited in *Communale:* "The facts in Mannheimer, disclose that there was no question of settlement involved". The Court underscored the last sentence from the portion of the *Communale* opinion we have quoted. The Court discussed what constitutes conduct tantamount to an insurer's bad faith performance of its contract:

> American Fidelity stresses in its brief that it was not notified of the settlement offer, that it was not shown that Johnson's attorney did not properly defend the claim, or that the judgment would have been any smaller had American Fidelity furnished counsel to defend. All this is true but we fail to see how this will exculpate American Fidelity from the dilemma in which it finds itself because of its unjust denial of coverage and refusal to defend under the renewal policy. American Fidelity's obvious failure to examine and appraise the facts concerning the agency of Clayton, its failure to investigate and appraise the probability and the extent of Johnson's liability, its failure to explore settlement possibilities and to consider the advisability of settlement where Johnson was being sued for the wrongful death of one youth and injury to another, was

tantamount to bad faith in the performance of its contractual obligations to the insured. Surely Johnson should not be penalized for failure to do the idle act of notifying American Fidelity of the settlement offer after it had renounced the contract and washed its hands of the whole affair.

We read *American Fidelity* as holding that in the determination whether an insurer's conduct amounts to bad faith in a suit for the excess judgment, an offer of settlement is a necessary element. In *American Fidelity,* as in this case, there was a failure to investigate the accident, failure to appraise the insured's exposure to liability, and failure to explore settlement possibilities. All of these failures appear to have resulted from the company's false conclusion as to the coverage of the policy. But there is no evidence of a causal connection between these failures and the excessive amount of the judgment. The only difference between *American Fidelity* and the instant case is the offer of settlement. Contrary to the appellant's contention, an uncommunicated offer is not the same as no offer. An offer to settle, even if unknown to the insurer, is objective evidence of the connection between the insurer's breach of contract and the amount of the damage.

It may well be, in a non-*Erie* bound case or in a case originating in another state, that this Court would be able to say that an offer to settle is irrelevant or irrational when the insured is judgment-proof and the insurer has washed its hands of the case. There is certainly a greater likelihood of a settlement if an insurance company is in a case than if the company is out of it. Moreover, there are alternatives to an insurer's abandonment of an insured: a declaratory judgment action or defense of the suit with reservation of its right to deny coverage. In a sense, a judgment for the face amount of the policy rewards the insurer for its misconduct: such a judgment definitely limits its liability to the face of the policy and, at the least, saves attorney's fees.

We are conscious of these and other contentions the insured makes; we are aware of the insurer's countercontentions. In effect, as the district court and this Court understand the Florida cases, especially *American Fidelity*, the insurer is not liable for bad faith or conduct tantamount to bad faith in the absence of an offer to settle.[6]

The judgment is affirmed.

---

**6.** Since *on this appeal* the insurer, not the insured, prevails, Fla.Rev.Stats. § 627.0127, F.S.A., as amended July 25, 1967 (No. 67400), is not applicable. We therefore do not reach the question whether the above section is retroactive and requires Seward's attorneys' fees *on appeal* to be assessed against State Farm.