343 So.2d 1298 (1977)
Willie THOMAS and Annie Thomas, His Wife, D/B/a Bon's Laundry # I, Appellants,
v.
WESTERN WORLD INSURANCE COMPANY, a Florida Corporation, Appellee.
No. 76-197.
District Court of Appeal of Florida, Second District.
March 23, 1977.
Rehearing Denied April 21, 1977.
*1300 Richard A. Zacur and Richard Mensh, of Mensh & Mensh, St. Petersburg, for appellants.
Donald M. Spangler, of Marlow, Mitzel, Ortmayer & Shofi, Tampa, for appellee.
PER CURIAM.
The issue in this appeal is whether appellants who are insureds are entitled to seek recovery against their liability carrier for an amount in excess of the policy limits where their insurance carrier has wrongfully refused to defend a negligence action against them. The trial court answered the question in the negative and entered summary judgment in favor of the appellee insurer. We reverse.
It is undisputed that at the time material herein, appellants Willie and Annie Thomas owned and were doing business as Bon's Laundry # 1. The liability for personal injuries was insured by appellee Western World Insurance Company for a limit of $5,000 for a single injury. In September 1973, one Michael Hancock was injured on appellants' business premises when appellants' agent, Kenny, who was in sole charge of their premises, allegedly threw acid on him. Hancock filed suit against the Thomases on November 26, 1973, and process was served on appellants on November 27, 1973.
Three days after being served with process, appellant Willie Thomas went to the carrier's local agent to make a loss report which the agent reduced to writing saying, in material part, "Kids banging on doors using abusive language. Said they were going to break in and take money. Kenny chased them out and threw sulphuric acid on one kid. Kenny said the same boys had been there before bugging him." The written report was thereupon, that same day, forwarded to the appellee carrier's home office together with  and this is significant  a copy of the summons and complaint filed in the case of Hancock v. Thomas, et al.
The significance of the forwarding to the carrier of Hancock's pleading is that Hancock's suit sounded in simple negligence, and no punitive damages were sought. Nevertheless, though chargeable with notice of this fact, the carrier's vice president of claims sent the Thomases a letter by certified mail on December 13, 1973, notifying them that the policy "does not cover the occurrence" and "that this policy excludes claims arising out of assault and battery." This notice was delivered on December 17, 1973, the twentieth day following service of the complaint upon appellants and the day on or before which appellants were required to respond to Hancock's complaint against them.
Counsel for both parties have stipulated that the carrier never investigated the claim (beyond taking the aforesaid loss report); that it never attempted to settle Hancock's claim within policy limits (nor does it appear that an offer to so settle the claim was ever made on behalf of Hancock); that default was entered against the Thomases in the Hancock suit on January 18, 1974; and that on July 11, 1974, a final judgment was entered in favor of Hancock and against the Thomases in the sum of $18,459.73. It is further stipulated that after making the aforesaid loss report the Thomases had no further communications or contacts with the carrier or its agents regarding this matter prior to the instant suit, which was filed on January 14, 1975.
In this suit the Thomases seek the full amount of the judgment against them in favor of Hancock alleging that the carrier had wrongfully refused to defend. While *1301 the carrier answered denying liability, it nevertheless thereafter conceded its wrongful refusal to defend and filed an offer of judgment in the sum of $5,000, representing its policy limits. On April 23, 1975, it paid the $5,000 policy limits to Hancock pursuant to a garnishment order in Hancock's case. The carrier then moved for summary judgment in the instant case and, on January 23, 1976, the motion was granted and a final summary judgment was entered, the trial court finding in pertinent part:
"The contract sued upon clearly excluded assault and battery and suits arising from the infliction of intentional torts. The stipulated facts proved that the defendant's decision to deny coverage and refuse to defend the matter of Hancock v. Thomas was made with no more information available other than the aforementioned loss report alleging the infliction of intentional acts, and the summons and complaint, which alleged negligence.
"While the court recognizes that the decision to deny coverage and refuse to defend was an error in judgment on the part of the defendant, in view of the allegations of the complaint setting forth a cause of action in negligence, it does not appear to this court as wantonly, maliciously, unethically, or in `bad faith' and that there is no genuine issue of material fact upon these questions... ."
In support of the trial court's judgment, appellee makes two related arguments. First, it argues that a settlement offer by the injured party in the earlier lawsuit is a prerequisite to the insured's obtaining any judgment against the insurance company in excess of the policy limits. Second, it says that bad faith is another prerequisite to any excess judgment, and here there is no substantial evidence on which a jury could find bad faith.
Support for appellee's arguments may be found in Seward v. State Farm Mutual Ins. Co., 392 F.2d 723 (5th Cir.1968), a diversity case arising in Florida. That case, relying primarily on American Fidelity and Fire Insurance Co. v. Johnson, 177 So.2d 679 (Fla. 1st DCA 1965), made the following statements:
"This Court has summed up the Florida law: `As we construe the law of Florida, absent conduct amounting to "bad faith" or negligence "to the extent of bad faith", the policy limits govern insurer's liability for failure to defend.' Hendry v. Grange Mutual Casualty Co., 5 Cir.1967, 372 F.2d 222. See also Burton v. State Farm Mutual Automobile Insurance Co., 5 Cir.1964, 335 F.2d 317.
"Loose generalizations may be found in secondary sources which state or imply that an insurer is held to strict liability for `any damages' sustained as a result of the breach of contract for failure to defend. An examination of the cases, however, discloses that when an insurer is held liable for the excess over the policy, invariably there was offer to settle the initial claim. And invariably the insurer was either guilty of bad faith in refusing to accept a reasonable settlement within the policy limits or guilty of conduct tantamount to bad faith.
"... .
"We read American Fidelity as holding that in the determination whether an insurer's conduct amounts to bad faith in a suit for the excess judgment, an offer of settlement is a necessary element..."
We cannot agree with the Seward case and accordingly we reverse the judgment of the trial court.

I. Settlement offer as prerequisite

In American Fidelity, after the carrier had denied coverage, the insured employed his own counsel to defend against a suit filed by a third-party claimant. In the course of the litigation, the claimants offered to settle within the policy limits of American Fidelity's policy. The insured lacked sufficient funds to settle and since American Fidelity had denied coverage, the offer was neither accepted by the insured nor communicated by him or his counsel to American Fidelity. Judgment in excess of the policy limits was thereafter entered and *1302 the insured sought to recover the full amount of the judgment. After affirming a finding that the carrier wrongfully refused to defend, the First District Court of Appeal sustained a judgment against the carrier for the full amount of the insured's liability established in the prior suit. Patently, the court went no further than to equate an uncommunicated offer of settlement with a communicated one so as to place American Fidelity within the general rule that a settlement offer supports an excess judgment against the insurer. It did not hold expressly that a settlement offer was essential to excess liability. We do not think the case impliedly held such an offer essential.
The observation by the Fifth Circuit in Seward that settlement offers seem invariably to appear in "excess over" cases may well be true as far as it goes, but does not necessarily support the ultimate conclusion made by that court that a settlement offer is a "necessary element." Unfortunately, it appears Seward may have influenced subsequent Florida cases which apparently recognize the possibility of such a rule.[1] We don't. In any case, at the very least we think it clear that American Fidelity does not stand for such a rule.
We think the issue of whether a settlement offer is a prerequisite for an excess judgment is clarified in Comunale v. Traders & General Insurance Co., 50 Cal.2d 654, 328 P.2d 198 (Cal. 1958), a case which is quoted extensively in both Seward and American Fidelity. That case states the following general principle:
"There is an important difference between the liability of an insurer who performs its obligations and that of an insurer who breaches its contract. The policy limits restrict only the amount the insurer may have to pay in the performance of the contract as compensation to a third person for personal injuries caused by the insured; they do not restrict the damages recoverable by the insured for a breach of contract by the insurer."
Then the case points out that if the insured has employed competent counsel to represent him, there is no ground for concluding that the judgment would have been for a lesser sum had the defense been conducted by the insurer's counsel. In that situation the liability of the insurer for failure to defend is limited to the amount of the policy plus attorney's fees and costs. Finally, the case says this reasoning does not apply where the insured is unable to meet a reasonable settlement offer within the policy limits.
The case does not say a settlement offer is a prerequisite to excess liability in every case. It merely says that it is one factor that may lead to excess liability even if the insured employs counsel to represent him.
We think it clearly follows from the Comunale case that even in the absence of a settlement offer, the insurer may be liable for an excess judgment where (1) due to the actions of the insurer, the insured suffers a default or final judgment without benefit of an attorney, and (2) the insured can prove the final judgment would have been lower had the suit been properly defended. Such a case would fall within the general rule, quoted above, that policy limits do not restrict the damages recoverable by the insured for breach of contract.
Of those cases wherein a default had been taken against the insured, we have been unable to find a case, nor has one been cited to us in which, as here, the carrier was not only chargeable with notice that the claim for damages against its insured sounded in an action within coverage of the policy, but was also chargeable with notice of a potential affirmative defense which could and should have been pleaded. The potential defense in this case was that the insured's agent Kenny committed an act outside the scope of his employment. This defense may well have been sufficient to relieve the insureds from liability that might otherwise have been imposed under *1303 the doctrine of respondeat superior. If this defense had been pleaded and established in Hancock's suit against the Thomases, then the damages for the wrongful failure of the Thomases' carrier to provide the means of interposing it would be fixed just as certainly as one might measure them in the ordinary "excess over" case by the difference between an offer of settlement made in such case and an excess judgment ultimately obtained.[2]
Now on the other side of the coin, it is black-letter contract law that a party suffering a breach is obligated to take all reasonable means to protect himself and mitigate his damages. Here, for example, depending upon all relevant facts, circumstances and wherewithal on the part of the insureds, reasonable diligence in this regard may have made it incumbent on them to employ independent counsel (even though they became aware of the carrier's breach at a very late date) either immediately to jump into the fray to preserve remaining rights or to attempt timely to have the default and final judgment set aside.[3] At a trial on the full merits the carrier herein should certainly have the opportunity affirmatively to plead, by amendment if necessary, and establish a breach of this obligation on the insureds' part in mitigation of its potential liability. This issue, of course, would relate to entitlement to damages, even assuming culpability on the part of the carrier.
The Thomases here would have the burden of establishing their damages. If the trier of fact determines they were notified so late of the insurer's refusal to defend that they could not reasonably have been expected to obtain counsel, and if they establish their defense that the act of their agent was beyond the scope of his employment there would be a basis for awarding them the full amount of the judgment against them. If the insureds fail in carrying this burden, they are in no worse position now than they would be had the carrier not breached its contract and had undertaken a proper defense.

II. Bad faith as a prerequisite

In its final judgment, the trial court relied primarily on the absence of showing of "bad faith." Even assuming that "bad faith" on the part of the insurer is a prerequisite to recovery in excess of the policy limits, we would be compelled to reverse. In American Fidelity the court held that the insurer's failure "to investigate and appraise the probability and the extent of [the insured's] liability, its failure to explore settlement possibilities and to consider the advisability of settlement where [the insured] was being sued for the wrongful death of one youth and injury to another, was tantamount to bad faith in the performance of its contractual obligations to the insured... ." 177 So.2d at 683. If we were to follow the outline of American Fidelity, we would hold that given a complaint sounding in negligence, and given a possible absolute defense on behalf of the insured, the insurer's actions raise a triable issue of "bad faith" and summary judgment was improper.
However, we do not agree that "bad faith" or its equivalent is an absolute prerequisite to a recovery of excess damages in the present case. The case which sets forth the standard of "bad faith" as a requirement for damages over policy limits is Auto Mut. Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938). That case, and Beck v. Kelly, 323 So.2d 667 (Fla. 3d DCA 1975), were each decided within the context of an insured's failure to exercise good faith in the defense or settlement of claims against *1304 an insured. This line of authority relates to the exercise of judgment by the insurer.
In the case before us, there is no threshold question of "good faith" vs. "bad faith."[4] For here, the company exercised no faith at all. It simply wrongfully refused to comply with its contract to provide a defense on behalf of its insureds. If that breach by insurer caused foreseeable damages to be assessed against its insureds, to that extent the insurer should be held liable.
American Fidelity may indirectly support the idea that bad faith is required for any excess judgment, for the court there did find bad faith. But we are unaware of any Florida case which directly holds bad faith to be a prerequisite to excess coverage where the insurer fails to defend the case in any manner.
An insurer which denies coverage does so at its own risk. This has been held to be true even where such denial is on a mistaken but honest belief that coverage did not exist. St. Paul Fire & Marine Insurance Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA 1973). It seems only fair that an insurer whose contracts are by their very nature "adhesive" should be held to at least the same standard of damages applicable to other contracting parties. One purchasing coverage should be able to rely upon this. An insurer at least impliedly represents it will be responsible for damages if it fails to provide the contracted for coverage and defense. The concept of "bad faith" is a viable and useful test for determining damages against an insurance company within the context of settlement negotiations and defense of claims against its insureds. But, employment of the test presupposes the company is attempting to exercise skill, judgment and fidelity on their behalf. Appellee concedes that it did not measure up to this standard.
Accordingly, the judgment appealed from is reversed and the cause remanded for further proceedings consistent herewith. Consonant with the liberality by which amendments to pleadings are allowed under our rules of civil procedure, opportunity ought to be given each of the parties to frame all issues that we have herein recognized as being among those which may be properly addressed.
REVERSED and REMANDED.
BOARDMAN, C.J., and SCHEB, J., concur.
McNULTY, J., concurs specially with opinion.
McNULTY, Judge, concurring specially.
I fully concur in the reversal of the summary judgment entered herein and in so much of the majority opinion which assumes "bad faith" to be a condition precedent to recovery in an "excess over" case. Moreover, I fully concur that the acts and conduct on the part of the insurer herein, if true, would support a jury finding of "bad faith" in the premises. I would disagree, however, with that portion of the opinion which would eliminate "bad faith" in a case in which a liability insurer breaches its covenant to defend.
The adoption of such a rule would ignore the fact that a liability insurance policy, first and foremost an indemnification contract which incidentally also includes an undertaking to defend (so that the carrier may, rightfully, protect its own interest), is a bifurcated contract which by its express terms limits the responsibility of the carrier. In terms of dollars and cents, the company agrees to pay up to a specified amount a legal obligation of its insured which is predicated on liability together with the reasonable fees and costs of an adequate defense to the claim against the insured. That's what the insured purchased and that's all to which he is entitled. Indeed, if *1305 in this case the carrier was not guilty of any negligence or conduct "tantamount to bad faith", but simply tendered the face amount of the policy plus a reasonable sum to cover costs and attorney's fees saying it was too busy to undertake a defense or merely chose not to, could it be said that ipso facto it would be liable for an "excess over" judgment if one were obtained against the insured? Certainly not.
The reason why "bad faith" has long been considered a condition precedent to an "excess over" judgment is because such a judgment is "punitive" in nature in that it renders the insurer liable for more than he undertook to be liable for; and under black letter contract law a mere breach of the contract will not result in such a consequence.[1]
NOTES
[1] See Beck v. Kelly, 323 So.2d 667 (Fla. 3d DCA 1975); St. Paul Fire & Marine Insurance Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA 1973).
[2] Even if the insured cannot establish that he would have prevailed entirely had he been adequately defended, he might be able to prove that a reasonable defense would have resulted in a damage award lower than that actually incurred. But no point is made on this appeal that the damages to Hancock were excessive.
[3] Of course, if the insurer's refusal to defend is unjustified, it becomes liable to the insured for reasonable attorneys' fees and other expenses incurred in defending the action brought by the third party. 44 Am.Jur.2d, Insurance, § 1547; Annot., 49 A.L.R.2d 694, 721 (1956).
[4] Where the insured is relying on a settlement offer to prove excess damages, he might arguably need to show that the offer would or should have been accepted had the insurer been properly defending the case. Proof of this issue might, in turn, require some evidence of what constitutes good faith or bad faith. But that is far different from showing bad faith as a prerequisite to any excess liability.
[1] See, e.g., Gordon v. Nationwide Mutual Insurance Company, 30 N.Y.2d 427, 438, 334 N.Y.S.2d 601, 608, 285 N.E.2d 849 (1972).