583 So.2d 1063 (1991)
Matthew ROBINSON, et al., Appellants,
v.
STATE FARM FIRE & CASUALTY COMPANY, Appellee.
No. 90-367.
District Court of Appeal of Florida, Fifth District.
July 3, 1991.
Rehearing Denied August 5, 1991.
Ronald L. Harrop, September L. Fernandez and David B. Falstad of Gurney & Handley, P.A., Orlando, for appellants.
John R. McDonough and David W. Henry of McDonough, O'Neal & O'Dell, Orlando, for appellee.
GRIFFIN, Judge.
Appellant seeks review of a summary final judgment rendered in favor of the *1064 appellee in this action for bad faith. We reverse.
This suit arose out of an automobile accident that occurred on August 14, 1976. James Lockley, appellee State Farm's insured, ran a stop sign, severely injuring seventeen year old Matthew Robinson. At the time of the accident, Lockley was driving a 1975 Pontiac which he had agreed to purchase from a local dealership four days before the accident and which he had picked up the day before the accident. Title to the vehicle was still in the name of the dealership when the accident occurred.
Robinson and his father filed suit against Lockley, the dealership and State Farm. In its answer, State Farm admitted it provided $15,000 coverage for a 1971 Ford Galaxy owned by Lockley. State Farm also admitted that if the dealership owned the Pontiac, then State Farm did cover Lockley for the accident, although their insurance was excess over any insurance the dealership may have had. State Farm denied it provided coverage if Lockley were the owner of the 1975 Pontiac, relying on the definition of "newly acquired automobile"[1] in its policy. State Farm asserted that coverage did not exist because State Farm did not insure all the automobiles owned by Lockley when he acquired the Pontiac and because Lockley had not applied for insurance on the Pontiac within thirty days following delivery. State Farm's claim that it did not insure all of Lockley's vehicles was based on Lockley's ownership of an uninsured pickup truck; however, Lockley claimed the pickup was inoperable. State Farm concedes an inoperable vehicle did not have to be insured in order to meet the "insures all automobiles" requirement of the "newly acquired automobile" definition.[2]
The record reflects that Lockley filed a claim with State Farm on August 16, 1976, two days after the accident. State Farm had in its files a statement dated August 18, 1976 signed by Lockley. In this statement Lockley stated that the truck had been inoperable for about three months due to drivetrain problems and he had cancelled the insurance on the truck because it could not be driven. The record shows that Lockley's truck, which he traded in to buy the Pontiac, was towed in to the dealership on the day Lockley contracted to buy the Pontiac.
On September 21, 1976, thirty-eight days[3] after being notified by Lockley of this accident, State Farm denied coverage to Lockley.[4] When this case finally was tried, after some nine years of litigation, the only evidence ever adduced on the operability issue was the testimony of Lockley that the truck was not operable. The apparent theory of State Farm in denying coverage was that Lockley had a history of insuring only one vehicle at a time, whether the second vehicle was operable or not. Lockley did not deny that, for a period of time, he had insured only the truck even though the Galaxy was operable. He testified that he had put the coverage on the *1065 truck because it was the vehicle he used "all the time" but transferred his insurance coverage back to the Ford when the truck broke down and he "put [his Ford Galaxy] back on the road". Thereafter, he decided to trade the truck for the Pontiac.
Concerning the failure of Lockley to apply for coverage within thirty days, State Farm contended that Lockley's filing of a claim was not equivalent to requesting the extension of coverage to the newly acquired (wrecked) vehicle. At trial, State Farm did not seek to have this coverage defense presented to the jury.
In addition to denying coverage, State Farm also failed to provide a defense to Lockley, and he was eventually defaulted.[5] One month prior to trial, State Farm had rejected the Robinsons' offer of a policy limits settlement of $15,000, offering only $500 to settle all claims. During the course of the ensuing jury trial, State Farm increased its offer to $10,000, but that offer was not accepted. The jury awarded the Robinsons judgments totaling $120,000 and State Farm was found to insure the Pontiac.
The judgment entered against State Farm was limited to $15,000, following the procedure utilized prior to the enactment of legislation prohibiting joinder of insurers. The Robinsons thereafter filed the instant proceeding, an action to recover the excess of the judgment amount over policy limits, based on: (1) State Farm's bad faith in failing to properly investigate the coverage, liability and damages issues; (2) State Farm's failure to provide Lockley with a defense; and (3) State Farm's refusal to settle the Robinsons' claims within policy limits. Summary judgment was granted in favor of State Farm on two grounds: (1) the bad faith action against State Farm had to have been brought in the underlying automobile negligence law suit; and (2) the lower court's refusal to grant the Robinsons' motion for summary judgment on the coverage issues in the underlying negligence action established, as a matter of law, that State Farm could not have acted in bad faith.[6]
We cannot affirm based on the first ground. What little currency this "splitting the cause of action" argument might have had, based principally on Schimmel v. Aetna Casualty & Surety Co., 506 So.2d 1162 (Fla. 3d DCA 1987), has evaporated with the supreme court's recent decision in Blanchard v. State Farm Mutual Automobile Insurance Co., 575 So.2d 1289 (Fla. 1991). More intriguing is the conclusion that State Farm cannot be exposed to the trial of a bad faith claim where the trial judge presiding in the earlier lawsuit to adjudicate the coverage issue had ruled that sufficient factual issues remained in dispute to preclude the trial court from summarily entering a judgment finding coverage. In other words, if the trial court could not look at the record and rule that coverage existed as a matter of law then (also as a matter of law) State Farm could not have acted in bad faith. We reject this conclusion.
The trial court interpreted Judge Daniel's order to mean the coverage issue was "not frivolous" or "wholly lacking in merit", which it then equated to a "reasonable *1066 and legitimate" disagreement as to coverage. Denial of a plaintiff's motion for summary judgment does not necessarily mean a defense is "not frivolous"; nor does finding an issue to be "not frivolous" mean it is "reasonable and legitimate." In Florida, the trial judge may not award a summary judgment unless no material fact is in dispute. Holl v. Talcott, 191 So.2d 40 (Fla. 1966). Under this standard, "the facts must be so crystallized that nothing remains but questions of law." Moore v. Morris, 475 So.2d 666 (Fla. 1985). If credibility of a witness is disputed, summary judgment is improper. Ritchey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 361 So.2d 438 (Fla. 2d DCA 1978).
The trial judge in the original suit did issue a speaking order on the cross motions for summary judgment but, notably, did not expressly identify any factual issue of operability of the truck.[7] The trial judge instead focused on the thirty-day application limitation:
Lockley testified at a deposition that he notified State Farm within thirty days of the accident and his purchase of the Pontiac but was told "they didn't think they could cover it." Thus, this case is distinguished from Lowe v. State Farm Mutual Auto Insurance Co., 420 So.2d 313 [318][8] (Fla. 5th DCA 1982) where there was no dispute that the insurer had not been notified until nearly five months after the purchase and subsequent accident. Here, there is a disagreement as to whether Lockley applied for coverage within the required thirty day period.
If the facts are viewed in the light most favorable to Lockley and he applied for coverage, State Farm's anticipatory repudiation obviated the necessity that Lockley tender payment. Hospital Mortgage Group v. First Prudential Development Corp., 411 So.2d 181 (Fla. 1982).
* * * * * *
Genuine issues of material fact and conflicting inferences exist in this case as to whether or not Lockley met the policy conditions in order to have insurance on the Pontiac as an after acquired vehicle. Thus, both defendant, State Farm's and plaintiffs' motions for summary judgment are barred on the issue of insurance coverage.
It is impossible to stretch this interlocutory denial of a motion for summary judgment into a conclusion that State Farm met its duty of good faith as the liability insurer of James Lockley. It makes no sense that an insurer who asserts a coverage issue that, for any reason, withstands summary judgment, but ultimately fails, would be excused from all of the good faith obligations imposed on the insurer who admits coverage.
The cases relied on by the trial court for its conclusion that there was no bad faith as a matter of law were incorrectly applied to the issue in the present case. United States Fire Insurance Co. v. Clearwater Oaks Bank, 421 So.2d 783 (Fla. 2d DCA 1982) involved a discovery issue in a first-party insurance case. The court took pains to distinguish a cause of action for bad faith due to an insurer's failure to settle a third-party claim against the insured within policy limits, and a pure (first-party) contractual claim where the parties "simply disagree over whether the claim is covered by a policy". In Allstate Insurance Co. v. Swanson, 506 So.2d 497 (Fla. 5th DCA 1987), this court merely analogized the rule against allowing discovery in first-party breach of contract cases to a third-party insurance case where the insurer's duty to provide coverage had not yet been judicially established. These cases do not imply that an action for bad faith in a third-party *1067 insurance context cannot lie where the insurer and the insured disagree over coverage  even if the disagreement were "reasonable and legitimate".
The supreme court described the duty of a liability insurer in Boston Old Colony Insurance Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980):
An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard to the interests of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith. The question of failure to act in good faith with due regard for the interests of the insured is for the jury.

Id. at 785 (citations omitted) (emphasis added). See also Clauss v. Fortune Ins. Co., 523 So.2d 1177 (Fla. 5th DCA 1988).
State Farm's refusal to defend Lockley is the complicating factor. Courts have struggled with the concept of "bad faith" in cases where the insurer wrongly denies coverage and refuses to defend.[9] Because, as the above-quoted passage from Gutierrez illustrates, "bad faith" is essentially a breach of implied fiduciary duties that arise out of the insurer's right to control the defense and settle claims against the insured, some courts view bad faith as an irrelevant concept where the insurer refuses to defend, and treat such cases as pure breach of contract.[10] Under a contract theory, an excess verdict against the insured is simply an element of damage resulting from the insurer's breach of the duty to defend. Others view the insurer's abandonment of the defense of the insured and consequent refusal to settle as the most extreme degree of breach of the insurer's fiduciary duty.[11] Whether viewed as contract or tort, the overwhelming majority of courts at least agree that an insurer who incorrectly denies coverage and then refuses to settle should be in no better position than the insurer who accepts coverage but fails to meet its settlement obligations.[12] A very few courts, concerned about the harshness of imposing liability for breach of the duties described in Gutierrez where the insurer has an "arguable," "good faith" or "fairly debatable" coverage defense, have refused to impose any liability for breach of the duty to settle.[13] Although at least one commentator has characterized Florida's approach as "unsettled",[14] *1068 no Florida court has ever adopted the "fairly debatable" approach.
In the earliest Florida case to address this issue, American Fidelity Fire Insurance Co. v. Johnson, 177 So.2d 679 (Fla. 1st DCA 1965), cert. denied, 183 So.2d 835 (Fla. 1966), the court concluded that the insurer's failure to properly examine the coverage issue, along with the failure to investigate and settle, would subject the insurer to liability for an excess verdict on the basis of bad faith. In a later case, the First District in Florida Farm Bureau Mutual Insurance Co. v. Rice, 393 So.2d 552 (Fla. 1st DCA 1980), rev. denied, 399 So.2d 1142 (Fla. 1981), "assumed" that bad faith still must be proved where the insurer wrongly refuses to defend its insured. In Caldwell v. Allstate Insurance Co., 453 So.2d 1187 (Fla. 1st DCA 1984) the First District suggested that, because the proof and available defenses under contract and bad faith theories differ substantially, either remedy may be available to recover an excess judgment where there is a refusal to defend.
According to Thomas v. Western World Insurance Co., 343 So.2d 1298, 1303-1304 (Fla. 2d DCA), cert. dismissed, 348 So.2d 955 (Fla. 1977), the duty to defend is an express contractual undertaking, the breach of which subjects the insurer to pay all damages that foreseeably flow from the breach, including a judgment against the insured in excess of policy limits, attorneys fees and other expenses. The Thomas court concluded that "bad faith" is not an issue in refusal to defend cases because the insurer "exercised no faith at all."[15]
The Third District Court of Appeal has held there can be no excess judgment in the absence of bad faith even where there was a breach of the duty to defend. First of Georgia Ins. Co. v. Dube, 376 So.2d 910 (Fla. 3d DCA 1979); Central Nat'l Ins. Co. v. Gonzalez, 295 So.2d 694 (Fla. 3d DCA 1974).
The question that arises in light of the ruling below is whether, in an "excess" case, the merits of the coverage defense and the insurer's conduct after denial of coverage are relevant at all. Johnson,[16]Rice,[17] and Caldwell[18] all suggest the circumstances involved in the denial of coverage should be taken into account in evaluating an insurer's bad faith.[19] Such factors appear to include whether the insurer was able to obtain a reservation of the right to deny coverage if a defense were provided;[20] efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; the substance of the coverage dispute or the weight of legal authority on the coverage issue; the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage; and efforts made by the insurer to settle the liability claim in the face of the coverage dispute. We conclude this is the correct approach to evaluating a claim for an "excess" judgment against an insurer where coverage is denied.[21] Thus, even though a proper factual finding that State Farm had a "reasonable and legitimate" basis to deny coverage would be relevant, it is not dispositive of State Farm's liability.
*1069 Even at the early procedural stages of this bad faith action, the record of the trial on the coverage issue contains an inference of bad faith. Faced with clear liability on the part of their insured, damages valued well in excess of the $15,000 policy limits[22] and no real evidence that Lockley's truck was operable, State Farm elected not to employ counsel to defend Lockley, refused to expend $15,000 to settle, and instead employed counsel to defend itself. Courts have found bad faith under analogous circumstances. See Powell v. Prudential Property & Casualty Ins. Co., 584 So.2d 12 (Fla. 3d DCA 1991); Hartford Accident & Indem. Co. v. Mathis, 511 So.2d 601 (Fla. 4th DCA), rev. denied, 518 So.2d 1275 (Fla. 1987). In this case, a jury could well find that, even taking the coverage dispute into account, a reasonably prudent person faced with paying the entire judgment likely to be rendered in the underlying case would not have taken the risk. To rely on the denial of the plaintiff's motion for summary judgment to determine as a matter of law that the plaintiff could not recover damages in excess of policy limits[23] was error.
REVERSED and REMANDED.
DIAMANTIS, J., concurs.
HARRIS, J., concurs specially with opinion.
HARRIS, Judge, concurring specially.
I concur.
If the issue in this case was merely whether the insurer should be permitted to pursue a legitimate, albeit uncertain, lack of coverage defense without fear that losing the defense would necessarily expose it to the harsh results of bad faith settlement, I would agree that the trial court should be affirmed. Otherwise, defenses available in other contract cases would be denied to insurance companies because of practical considerations. It would be less expensive to pay all questionable claims  and raise the rates for everyone  than to assert less than certain defenses.
But here there was more. In this case, at a time when the only information before it was that the pickup truck was inoperable (and had been so for three months before the accident), the insurer elected to deny coverage on the basis that the truck was operable. The insurer took no action, except as a defense asserted during the negligence action, to judicially determine coverage. The insurer refused to provide a defense even until the coverage issue was determined.
It was not until trial, and then only by the cross examination of Lockley, that the insurer could develop even marginal evidence to support its defense. Although this marginal evidence was sufficient to prevent the entry of a directed verdict, it was not available at the summary judgment hearing and, in any event, is insufficient  based on the insured's earlier action in initially asserting the defense without any supporting justification and in failing to defend its insured until the coverage issue was resolved  to preclude as a matter of law a bad faith action.
While the insurer has a right to present all appropriate coverage defenses suggested by the evidence whether or not success is certain, these coverage defenses should be presented in a way that will not unduly prejudice the rights of the insureds or third *1070 parties injured by them. An appropriate way of presenting coverage defense would be by declaratory judgment before the trial of the negligence action or as an affirmative defense asserted in said negligent action but determined prior to the negligence issue going to the jury. If presented as an affirmative defense during the negligence trial, it would be necessary, of course, that the insurer became a party to the negligence action. There is a problem in applying this solution. We have previously held, improperly I think, that the insurer may not intervene in the negligence action and that a declaratory judgment action would be inappropriate unless the policy language itself is ambiguous.[1]
Although other cases (many prior to the amendment to the declaratory judgment act) support this view, newer cases seem to give more consideration to the legislative direction:
This chapter is declared to be substantive and remedial. Its purpose is to settle and to afford relief from insecurity and uncertainty with regard to rights, status, and other equitable or legal relations and is to be liberally administered and construed.[2]
When the supreme court determined in Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969) that persons injured in automobile accidents were third party beneficiaries of the liability insurance policies issued to the negligent driver or covering his automobile, it determined that such liability insurer could be joined as a party defendant. Under the Shingleton joinder, the insurer could defend under the theory of no coverage and this issue could be severed and decided before the insured's liability was submitted to the jury.[3] This had the advantage of permitting reasonable settlement opportunities if coverage was determined to exist.
Although the legislature (apparently in response to Shingleton) took away the right of the injured third party to join the insurer in the negligence action,[4] it did not preclude the insurer, in order to contest coverage, from intervening in the action. The coverage issue is too important to await the ultimate determination of the insured's liability to third persons. This case is proof of that. By asserting this defense throughout trial (and by not seeking early determination of the issue and not defending the insured's interest until that issue was resolved) coverage was found to exist at the same time that an excess judgment of some $100,000 was found to exist.
I urge that we recede from Vanguard and permit the insurer, if it contests coverage, to either intervene in the negligence action or file an independent declaratory judgment action and obtain a speedy resolution of the coverage issue. This would be consistent with the legislative provision concerning product liability insurers:
[I]f the statement or any amendment thereto indicates that a policy or coverage defense has been or will be asserted, then the insurer may be joined as a party.[5]
NOTES
[1] Newly Acquired Automobile  means an automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if,

1. it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and
2. provided that no insurance shall be applicable to such newly acquired automobile unless as a condition precedent the named insured within 30 days following such delivery date applies to the company for insurance on such newly acquired automobile.
[2] See Silverstein v. Liberty Mut. Ins. Co., 505 F.2d 158 (5th Cir.1974); Southern Ins. Co. v. Charlotte Storage and Warehouse, Inc., 251 So.2d 725 (Fla. 2d DCA 1971); Martin v. Nationwide Mut. Fire Ins. Co., 235 So.2d 14 (Fla. 2d DCA 1970).
[3] According to the record, State Farm's decision was made on September 14, 1976, the day after the thirty-day newly acquired vehicle deadline expired.
[4] State Farm's decision not to defend, in light of the plaintiff's alternative allegation in the complaint that the dealership owned the Pontiac and State Farm's admission in its answer that, in such an event, it did cover Lockley for this accident on an excess basis, is unexplained. An insurer providing excess coverage generally has an undifferentiated duty to provide a defense to its insured. See generally Couch On Insurance 2d § 51.148 at 700 (Rev. ed. 1982).
[5] Suit was filed on March 21, 1979, State Farm was joined as a defendant on July 21, 1982 and the default against Lockley was entered on July 15, 1987.
[6] The trial court ruled as follows:

Judge Daniel's decision to allow the coverage issue to go to the jury represents as a matter of law a finding that a genuine dispute existed; had State Farm's position been frivolous or wholly lacking in merit, Judge Daniel would have been required under Rule 1.510(c) to grant summary judgment in favor of the Robinsons. Accordingly, Judge Daniel's prior finding that a genuine issue existed mandates summary judgment here in favor of State Farm because a suit for bad faith will not lie where the parties have a reasonable and legitimate disagreement as to coverage. See, Allstate Insurance Company v. Swanson, 506 So.2d 497 (Fla. 5th DCA 1987); U.S. Fire Insurance Company v. Clearwater Oaks Bank, 421 So.2d 783 (Fla. 2d DCA 1982).
Appellants cogently point out that this interlocutory order cannot be infused with such res judicata effect. See Armellini Express Lines, Inc. v. Sexton, 384 So.2d 310 (Fla. 5th DCA 1980). At most, this order might serve as some evidence that State Farm's position in the underlying case was not utterly without any record basis.
[7] Interestingly, at trial, the judge engaged counsel in a dialogue about why he had denied the motion for summary judgment, asking each side to summarize what portions of the record they had argued during the hearing. Counsel for State Farm identified two things only: (1) the State Farm agent's testimony that Lockley had a habit of switching coverage among his vehicles and (2) the deposition of Lockley failed to identify any specific major repair that was needed on the truck.
[8] The correct page number for this cite should be 318.
[9] Eskridge v. Educator and Executive Insurers, Inc., 677 S.W.2d 887 (Ky. 1984); See generally S. Ashley, Bad Faith Actions, § 4.11 at 21 (1984).
[10] See infra discussion of Thomas v. Western World Ins. Co., 343 So.2d 1298 (Fla. 2d DCA), cert. dismissed, 348 So.2d 955 (Fla. 1977), accompanying note 15.
[11] Comunale v. Traders & Gen. Ins. Co., 50 Cal.2d 654, 328 P.2d 198 (Cal. 1958).
[12] See, e.g., State Farm Auto. Ins. Co. v. Civil Service Employees Ins. Co., 19 Ariz. App. 594, 509 P.2d 725 (Ariz. App. 1973); American Fidelity Fire Ins. Co. v. Johnson, 177 So.2d 679, 683 (Fla. 1st DCA 1965), cert. denied, 183 So.2d 835 (Fla. 1966).
[13] Beck v. Pennsylvania Nat'l Mut. Casualty Ins. Co., 429 F.2d 813 (5th Cir.), reh. denied, 432 F.2d 563 (5th Cir.1970); Mowry v. Badger State Mut. Casualty Co., 129 Wis.2d 496, 385 N.W.2d 171 (Wis. 1986); see Ganaway v. Shelter Mut. Ins. Co., 795 S.W.2d 554 (Mo. Ct. App. 1990). By evaluating the "good faith" of the coverage dispute, these courts apparently acknowledge that the duty to settle exists even where the insurer has refused to assume the defense.
[14] Annotation, Insurer's Tort Liability for Consequential or Punitive Damages For Wrongful Failure or Refusal to Defend Insured, 20 A.L.R.4th 23, 42-45 (1983).
[15] The Fourth District Court of Appeal has recently read Thomas to permit recovery on a breach of contract theory without proof of bad faith. Shuster v. South Broward Hosp. Dist. Physicians' Professional Liab. Ins. Trust, 570 So.2d 1362 (Fla. 4th DCA 1990).
[16] 177 So.2d at 683.
[17] 393 So.2d at 555-556.
[18] 453 So.2d at 1190.
[19] We recognize some courts reject the notion that the coverage issue is relevant to "bad faith." See Luke v. American Family Mut. Ins. Co., 476 F.2d 1015, 1023 (8th Cir.1972) (Bright, J. concurring and dissenting), cert. denied, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973).
[20] In this case, Lockley agreed in writing that State Farm could reserve its rights under the insurance contract.
[21] Florida Standard Jury Instruction MI 3.2, designed for bad faith refusal to settle cases, provides: "An insurance company acts in bad faith in failing to offer to pay its policy limits toward settlement of a claim against its insured when offering that amount would have resulted in settlement of the claim and, under all of the circumstances, the insurance company should have offered that amount, had it acted fairly and honestly toward its insured and with due regard for his interests." This expression of Florida law supports our conclusion that the insurer's fairness and honesty and "due regard" for the insured's interest requires consideration of any coverage dispute and the insurer's conduct in light of the dispute. Doubt about coverage is certainly a "circumstance" influencing an insurer's settlement decisions.
[22] We make these statements based solely on our reading of the current record. If disputed, these will be issues to be decided by the fact finder in the subsequent proceedings.
[23] There seems little difference in the exposure of the insurer under a bad faith or contractual theory. In Butchikas v. Travelers Indem. Co., 343 So.2d 816 (Fla. 1976), the supreme court eliminated punitive damages and mental distress damages for a bad faith refusal to settle, absent dishonesty. The court did not expressly classify an "excess case" as either tort or contract.
[1] Vanguard Ins. Co. v. Townsend, 544 So.2d 1153 (Fla. 5th DCA 1989).
[2] § 86.101 Fla. Stat. (1989).
[3] See, e.g., Clemmons v. American States Ins. Co., 412 So.2d 906 (Fla. 5th DCA 1982).
[4] § 627.7262, Fla. Stat. (1989).
[5] § 46.051(3), Fla. Stat. (1989).