LEWIS, J.
Petitioners seek review of the decision of the First District Court of Appeal in Geico Indemnity Co. v. Shazier, 34 So.3d 42 (Fla. 1st DCA 2010), on the basis that it conflicts with the decisions of this Court in Susco Car Rental System, of Florida v. Leonard, 112 So.2d 832 (Fla.1959), and Roth v. Old Republic Insurance Co., 269 So.2d 3 (Fla.1972). In Shazier, the district court resolved a question regarding an insurer’s duty to defend and indemnify its insured in favor of the insurer. In doing so, the First District relied on a very constricted definition of “consent” and employed an unauthorized driver provision in contradiction of our clear precedent to the contrary under Florida’s dangerous instrumentality doctrine to defeat coverage. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
BACKGROUND
Kutasha Shazier was a named insured and owner of a Ford Expedition listed in her automobile insurance policy issued by the Geico Indemnity Company (Geico). In August 2006, because Shazier’s vehicle became disabled due to transmission problems, she rented a Hyundai Sonata from Avis Rent-A-Car (Avis), designating her Geico insurance as the primary insurer. The rental agreement contained the following provision regarding other drivers:
NO ADDITIONAL OPERATORS ARE AUTHORIZED OR PERMITTED WITHOUT AVIS’ PRIOR WRITTEN APPROVAL IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE RENTAL AGREEMENT OR APPLICABLE STATE LAW.
Another paragraph of the agreement also addressed “unauthorized drivers”:
Prohibited Use of the Car. Certain uses of the car and other things you or a driver may do, or fail to do, will violate this agreement. A VIOLATION OF THIS PARAGRAPH, WHICH INCLUDES USE OF THE CAR BY AN UNAUTHORIZED DRIVER, WILL AUTOMATICALLY TERMINATE YOUR RENTAL [AND] VOID ALL LIABILITY PROTECTION AND ANY OPTIONAL SERVICES THAT YOU HAVE ACCEPTED!.]
One evening soon thereafter, Shazier permitted the rental vehicle to be used by Frederick Royal, who in turn allowed the *1295 rental vehicle to be operated by Tercina Jordan. Jordan negligently operated the vehicle, and the car crashed into a tree, resulting in serious injury to minor passengers in the vehicle and the death of another. The injured passengers and the decedent’s representative subsequently filed personal injury actions against Shazier, Jordan, and Avis, and Avis filed a cross-claim for indemnity against Shazier. Geico, Shazier’s insurer, filed a declaratory judgment action seeking a determination that Geico had no duty under the policy to defend and indemnify Shazier or Jordan. One of the injured passengers and Geico filed competing motions for summary judgment. The passenger contended that coverage existed because the rental car constituted a “temporary substitute auto” under the Geico policy. Geico countered that because Avis had not given Jordan express permission to drive the rental car, the rental vehicle was not a “temporary substitute auto” as to the named insured, Shazier, under the terms of the Geico policy and thus Geico had no duty to defend or indemnify either Shazier or Jordan.
Shazier is the named insured in the Gei-co policy, which provides that Geico “will pay damages which an insured becomes legally obligated to pay because of bodily injury, sustained by a person, and damage to or destruction of property[,] arising out of the ownership, maintenance, or use of the owned auto.” Geico also “will defend any suit for damages payable under the terms of [the] policy.” An “owned auto” includes “a vehicle described in [the] policy for which a premium charge is shown” and also “a temporary substitute auto.” The latter term is defined as follows:
“Temporary substitute auto ” means a private passenger, farm or utility auto or trailer, not owned by [the policy holder], temporarily used with the permission of the owner. This vehicle must be used as a substitute for the owned auto or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.
With regard to an “owned auto,” the insurance contract covers the policy holder and “any other person using the auto with [the policy holder’s] permission.” As to a “non-owned auto,” the insurance contract covers the policy holder and his or her relatives “when driving the non-owned auto” with permission of the owner. The term “non-owned auto” includes “a private passenger, farm or utility auto or trailer not owned by or furnished for the regular use of either [the policy holder] or a relative ” but expressly excludes a “temporary substitute auto.”
The trial court entered a summary final judgment in favor of the passenger based on the determination that (1) the rented vehicle satisfied the definition of “temporary substitute auto” and thus was an “owned auto” under the Geico policy, (2) Geico had a duty to defend and indemnify Shazier for her vicarious liability under the dangerous instrumentality doctrine, and (3) Shazier’s decision to permit others to drive the car was covered because it was within the “use” of the vehicle under the policy. The trial court held that there was no genuine issue of material fact in dispute as to Geieo’s obligation to defend and provide insurance coverage for Shazier and others using the vehicle and that the Geico policy covered Tercina Jordan based on the permission given by Shazier for the use of the vehicle. Accordingly, the court ruled that, as a matter of law, Geico would be obligated to pay damages, if and when Kutasha Shazier becomes legally obligated to pay damages because of bodily injury sustained by the injured parties in the underlying tort action based on Florida’s dangerous instrumentality doctrine.
*1296 On appeal, the First District reversed and ordered the entry of summary judgment in favor of Geico. The district court determined that the rental car did not constitute a “temporary substitute auto,” reasoning as follows:
Under the policy, in order for coverage to attach in this case, the “temporary substitute auto” must have been used with the permission of Avis. As the owner, Avis had the authority to define the scope of permissible use of the rental car. See Duncan Auto Realty, Ltd. v. Allstate Ins. Co., 754 So.2d 863, 865 (Fla. 3d DCA 2000) (“[T]he owner of the temporary substitute vehicle, not its user, possesses the authority to define the scope of permissible use of the substitute vehicle.”). As evidenced by the rental agreement, Avis did just that. Avis granted Shazier permission to use the rental car so long as she was the only person who did so. Jordan’s use of the rental car automatically revoked the permission granted to Shazier by Avis. Therefore, because it was not being used with Avis’s permission, the rental car did not qualify as a “temporary substitute auto” and no coverage existed under the policy.
Geico, 34 So.3d at 43-44.
Petitioners filed separate notices to invoke our jurisdiction and briefs alleging express and direct conflict between the district court’s decision and this Court’s decisions in Susco and Roth. We granted review and consolidated the two cases.
ANALYSIS
The issue in this case stems from a trial court’s ruling on summary judgment based upon the interpretation of an insurance contract which causes our standard of review to be de novo. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000) (summary judgment); Kattoum v. N.H. Indent. Co., 968 So.2d 602, 604 (Fla. 2d DCA 2007) (insurance policy).
In this case, the district court determined that the rental contract between Avis and Shazier, which prohibited anyone not authorized by Avis from driving the car, governed whether Avis had given its permission for the use of the car within the meaning of Geico’s policy. That is, Geico’s definition of “temporary substitute auto” required that the vehicle be “temporarily used with permission of the owner.” The First District held that because the Avis rental contract between Shazier and Avis did not expressly authorize Jordan to operate the vehicle, the rental car was not being “used with the permission of the owner,” i.e., Avis. Thus, the rental vehicle was deemed a “non-owned auto” instead of a “temporary substitute auto,” and Geico denied coverage under the policy.
Petitioners correctly argue that the First District’s new definition of permission in the context of dangerous instru-mentalities conflicts with our decisions in Susco and Roth as to the meaning of an owner’s consent for the use of a vehicle under the dangerous instrumentality doctrine. Under that long-established doctrine, liability is imposed on the owner of an automobile who voluntarily entrusts the vehicle to an individual who causes damage to others through the negligent operation of the vehicle. Aurbach v. Gallina, 753 So.2d 60, 62 (Fla.2000); see Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 638 (1920) (“[Ojne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner.”). Our decisions have been based on the parameters of an *1297 owner’s “consent” or permission for use, the difference between “use” and “operation,” and the means by which consent may be vitiated under Florida’s dangerous instrumentality doctrine. As explained below, this Court determined in Susco and Roth that under Florida’s common law dangerous instrumentality doctrine, an owner’s, bailee’s, lessee’s, or permittee’s consent to the use of a vehicle cannot be vitiated by invocation of third-party agreements attempting to limit the scope of who may operate a vehicle. We begin our analysis by reviewing the decisions in Susco and American Fire & Casualty Co. v. Blanton, 182 So.2d 36 (Fla. 1st DCA 1966), and then our decision in Roth, which expressly relied on the prior two cases.
Susco, Blanton, and Roth
Factually, Susco is very similar to the present case in several particulars. There, a bailee rented a car from Susco Car Rental under an agreement that provided that no other person could drive the car without the rental company’s prior written consent. 112 So.2d at 834. The bailee, as with Shazier here, permitted an unauthorized driver to operate the car, and this unauthorized permittee was driving when the subsequent collision occurred. The occupants of the other vehicle involved filed an action, and the trial court entered a summary final judgment in favor of the rental car company. The Third District Court of Appeal, however, reversed. Leonard v. Susco Car Rental Syst. of Fla., Inc., 103 So.2d 243, 247 (Fla. 3d DCA 1958), aff'd, 112 So.2d 832 (Fla.1959). The disti’ict court rejected the rental company’s contention as owner of the vehicle that because the rental contract prohibited the bailee from permitting an unauthorized driver to operate the vehicle, the rental car owner had no liability to the injured parties. Id. at 246-47.
On review, we agreed and endorsed the district court’s reasoning as follows:
On the fundamental issue, the simple but sound statement of the district court can be unequivocally endorsed:
When this defendant [Susco Car Rental] turns over an automobile to another for a price, he in actuality intrusts that automobile to the renter for all ordinary purposes for which an automobile is rented. The fact that the owner had a private contract or secret agreement with the renter cannot make such restrictions a bar to the rights of the public. The restrictions agreed upon do not change the fact that the automobile was being used with the owner’s consent. Nor does it appear that the car was not being used for the purpose for which it was rented[J ie., the pleasure, convenience or business of the renter.
Susco, 112 So.2d at 834 (emphasis added) (quoting Leonard, 103 So.2d at 247). Thus, in Susco we determined that consent for use was not and could not be limited by an unauthorized operator clause and that the “use” of the rental car did not refer to the operator. Moreover, we held the prohibition on the use of the rental vehicle by other drivers contained within the rental contract could not negate the owner’s liability under the dangerous instrumentality doctrine. We explained that
the logical rule ... is that when control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse. The validity or effect of restrictions on such use, as between the parties, is a matter totally unrelated to the liabilities imposed by law upon one who owns and places in circulation an instrumentality of this nature.
*1298 112 So.2d at 835-36 (emphasis added). Accordingly, we defined consent expansively under the dangerous instrumentality doctrine as follows:
In the final analysis, while the rule governing liability of an owner of a dangerous agency who permits it to be used by another is based on consent, the essential authority or consent is simply consent to the use or operation of such an instrumentality beyond his own immediate control. Only to that limited extent is the issue pertinent when members of the public are injured by its operation, and only in a situation where the vehicle is not in operation pursuant to his authority, or where he has in fact been deprived of the incidents of ownership, can such an owner escape responsibility. Certainly the terms of a, bailment, either restricted, or general, can have no bearing upon that question.
Id. at 837 (emphasis added); see Frankel v. Fleming, 69 So.2d 887, 888 (Fla.1954) (“Having held a lessee liable in the cited case ... we find no difficulty in now holding the appellant, a bailee, responsible in the instant case for injury caused by the one to whom he entrusted the car... .”); accord State Farm Mut. Auto. Ins. Co. v. Clauson, 511 So.2d 1085, 1086 (Fla. 3d DCA 1987) (“To the same extent as the owner, a bailee (or sub-bailee) of a motor vehicle is liable to third persons under the dangerous instrumentality doctrine for the negligence of one to whom he has entrusted it.”).
The principles we enunciated in Susco were also subsequently applied by the First District in a case not involving a rental car. In American Fire & Casualty Co. v. Blanton, 182 So.2d 36 (Fla. 1st DCA 1966), the First District examined the application of the dangerous instrumentality doctrine to the meanings of “permission” and “use” under the terms of an insurance policy. In that case, the owner of the vehicle gave his underage son permission to drive the family car from their home to their farm where the boy would help his father. The owner, however, limited that permission by expressly forbidding his son to allow anyone else to ride with him. However, the owner’s son disregarded this directive and invited a friend to ride with him. After school, the owner’s son went home, picked up his friend at a designated spot, and then permitted the friend to drive the car. 182 So.2d at 38. The friend crashed the car into a ditch and injured his arm. The owner’s motor vehicle insurance policy provided for the payment of reasonable medical expenses resulting from an accident for a person injured while the vehicle was “being used by” the named insured, a household resident, or “any other person with the permission of the named insured.” Id. The insurer argued that because the owner had “specifically withheld permission for [his son’s friend] to operate the insured vehicle,” id., neither vicarious liability nor implied permission could be imposed under the dangerous instrumentality doctrine. Applying our decision in Susco, the district court noted that
implied, permission “has come to have a fixed, definite meaning in this jurisdiction” under the dangerous instrumentality doctrine, which is to the effect that the owner of a motor vehicle is relieved from responsibility for its use or misuse only upon a breach of custody amounting to a species of conversion or theft.
Id. at 38. Accordingly, when the owner permitted the use of the car, he was liable for injuries resulting from its negligent operation. Id. at 39. Moreover, “[w]here ‘original entrustment’ is shown to exist, liability thus imposed on the owner will not be altered because of a departure beyond the scope of authority.” Id,. Thus, just as in Susco we determined that the owner’s *1299 consent for use was not limited by a prohibition on other unauthorized operators, the district court held that the father’s prohibition on other passengers or operators was not effective to avoid liability under the dangerous instrumentality doctrine.
Finally, Roth, like Susco and the case here on review, involved a rental contract that attempted to prohibit the renter or bailee from permitting another driver to operate the rental car and the question of an exclusion to liability insurance coverage. Roth, 269 So.2d at 4. The bailee rented a car from Yellow Rent-a-Car and with the rental fee paid a premium for automobile liability insurance coverage with the rental company’s insurer. In the rental contract, the bailee also agreed that no other drivers were authorized. Nevertheless, the bailee allowed another person to operate the car, and the permittee subsequently struck two pedestrians. The injured pedestrians filed an action against the permittee, the bailee, and the rental car agency that owned the vehicle. The action was settled when the permittee’s insurer advanced the funds for the settlement. The question before us was whether the permittee’s insurer was entitled to indemnity from both the rental car owner and the original bailee of the vehicle. Id. at 5. In answering the question, we relied on Susco and Blanton in determining that, despite the prohibition against other drivers in the contract, the bailee’s insurer, as well as the owner’s insurer, covered the permittee:
Susco recognizes that a bailee or lessee of a rented automobile, similarly as its oumer, may permit another to operate it (and often does) and the latter’s negligent operation of it renders the oumer vicariously liable, together with his liability insurer, under the dangerous instrumentality doctrine, despite an agreement between the oumer and the lessee to the contrary. See American Fire & Casualty Co. v. Blanton, [182 So.2d 36, 39 (Fla. 1st DCA 1966) ]. A necessary legal corollary to this recognition in Susco is that the oumer and the lessee’s insurance coverage under financial responsibility (in this instance afforded by Old Republic) covers the lessee’s permittee as well. ...
The Susco and Blanton cases recognize that in the very nature of modern automobile use a lessee of a rental car often has to turn the car over to car park, garage, or filling station personnel and others for temporary operation and that it would be unreasonable to negate the rental car agency’s liability and its insurance coverage in case of accident because of the existence of a collateral or side agreement of the kind here involved. Often such permittees of rental car lessees temporarily driving rental ears would not be as fortunate as [the permittee] and have the protection of their own personal auto liability insurance coverage, rendering it even more difficult for injured members of the public to recover their losses arising from the negligence of drivers of rental cars.
Id. at 6-7 (emphasis added).
It is apparent from the foregoing analysis that we have previously applied a very broad and consistent definition for consent regarding an owner’s entrustment of a vehicle to another and that such consent for the use of a vehicle is not limited by the identity of the operator. This broad definition serves the interests of Florida’s public policy. Accordingly, the constriction of the meaning of consent in Shazier expressly and directly conflicts with our decisions in both Susco and Roth.
Resolving the Conflict
The conflict in this case is based on the interpretation of an insurance con *1300 tract upon application of well-established Florida law. Accordingly, we must first review the principles applicable to the interpretation of a contract of insurance. First, the contract must be construed “in accordance with the plain language.” Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000). Where the policy language “is susceptible to more than one reasonable interpretation, one providing coverage and ... another limiting coverage, the insurance policy is considered ambiguous.” Id. The ambiguous language is then construed “against the drafter and in favor of the insured” and “exclusionary clauses are construed even more strictly against the insurer than coverage clauses.” Id.
Clearly, neither Geico nor the district court applied the above principles in resolving the issue in the district court. Under the Geico policy, a “temporary substitute auto” is a vehicle not owned by the insured but which is “temporarily used with the permission of the owner” “as a substitute” for the insured’s vehicle. Although a “temporary substitute auto” is by definition not owned by the insured, Gei-co’s policy provides that such a vehicle is treated as the insured’s owned auto under the policy and that Geico will cover the insured and “any other person using the auto with [the insured’s] permission.” However, the “actual use must be within the scope of that permission.” Although the policy does not define “permission,” we determined in Susco and Roth that under the dangerous instrumentality doctrine, consent “is simply consent to the use or operation of such an instrumentality beyond [the owner’s] immediate control,” Susco, 112 So.2d at 837, and that consent cannot be vitiated except by “a species of conversion or theft.” Id. at 836. Under this precedent, it is clear that Avis consented or gave its permission to Shazier to use the vehicle. Under the Geico policy, and the principles stated above, the vehicle then became a “temporary substitute auto” that Geico covered as if it were the insured’s own vehicle. Geico’s use of the prohibition on unauthorized drivers contained in the rental contract to which it was not a party is thus inconsistent with Susco and Roth and the principles of insurance contract interpi-etation.
The district court’s reliance on Duncan Auto Realty, Ltd. v. Allstate Insurance Co., 754 So.2d 863 (Fla. 3d DCA 2000), as determinative of this case is misplaced. In Duncan, Calixto Garcia’s company owned several vehicles insured under a commercial automobile policy that provided for “temporary substitute auto” coverage. The insurance policy defined the term:
3. Any “auto ” you do not own while used with the permission of its owner as a temporary substitute for a covered “auto ” you own that is out of service because of its: (a) breakdown, (b) repair, (c) servicing, (d) “loss” or (e) destruction.
754 So.2d at 864. Garcia decided to trade in one vehicle due to mechanical problems and went to a dealership where he test drove a new truck with the dealer’s permission. During the test drive, Garcia had a collision, and the injured party sued Garcia, his company, and the auto dealer. Garcia’s insurer contended it had no duty to indemnify Garcia or his company because the truck Garcia test drove was not a “temporary substitute auto.” The Third District Court of Appeal agreed, stating that for coverage to attach in this case, the “temporary substitute vehicle” must have been performing a function that the disabled insured vehicle would have been performing but for its temporary disability. Duncan, 754 So.2d at 865. The court continued as follows:
*1301 Moreover, the owner of the temporary substitute vehicle, not its user, possesses the authority to define the scope of permissible use of the substitute vehicle. In this case, without question, the auto dealer only granted Garcia use of its truck for a routine test drive. Garcia did not have permission to utilize the auto dealer’s truck in Southwind’s business affairs in the same manner that he could have used the Ford F250. Thus, we fail to see how the auto dealer’s truck could possibly be deemed a “temporary substitute auto” under Allstate policy.
Id. (citing 8 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 117:86 (3d ed. 1997)).
Incorrectly seizing on the Third District’s statement, not applicable here, that the owner has the authority to define the “scope of permissible use,” the First District in this case concluded that Avis limited the scope of the car’s permissible use in this case by giving “Shazier permission to use the rental car so long as she was the only person who did so.” 34 So.3d at 44. This erroneous conclusion is based on a misunderstanding and misapplication of the difference between the concept of consent for use and the identity of the operator. The subsequent paragraphs of the cited section from Couch explain this difference:
As in the case of non-owned automobile coverage, the temporary substitute clause may require that the use be “with the permission of the owner” of the substitute vehicle. The permission required under the temporary substitute clause relates only to the purpose for which permission was given by the owner of the substitute automobile and not to the identity of the operator, and will cover use of the substitute automobile by another individual, regardless of whether that person has express or implied authorization to drive the car, provided such use is for a permitted purpose. Once the owner’s permission to use the substitute vehicle is revoked, the vehicle ceases to be a “temporary substitute car” under the insured’s policy.
Couch on Insurance § 117:86 (emphasis added) (footnotes omitted). Thus, the Duncan case was decided on the basis of the scope of use, i.e., a test drive. The car owner gave permission for Garcia to test drive the vehicle; the car owner did not give Garcia permission to use the vehicle in his business. Limiting the scope of permissible use is not limited by who is operating the car. As we stated in Susco, the “restrictions agreed upon [in an unauthorized driver clause] do not change the fact that the automobile was being used with the owner’s consent.” 112 So.2d at 835 (quoting Leonard v. Susco Car Rental Sys., 103 So.2d 243, 247 (Fla. 3d DCA 1958)).
In Blanton, the First District previously recognized the distinction between “use” and the “identity of the operator.” Examining the insurance provision in that case, which covered any person injured while occupying the owned vehicle when it was being used by a resident of the insured’s household, the district court stated:
The use of an automobile denotes its employment for some purpose of the user; the word ‘operation’ denotes the manipulation of the car’s controls in order to propel it as a vehicle. Use is thus broader than operation. ... One who operates a car uses it, ... but one can use a car without operating it.
182 So.2d at 39 (quoting Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co., 33 N.J. 507, 166 A.2d 355 (1960)). Accordingly, the district court stated the “general rule that a permittee may not allow a third party to ‘use’ the named insured’s car” *1302 could not preclude recovery by the injured party because
[ujnder such circumstances the second permittee is “operating” the car for the “use” of the first permittee and such “use” is within the coverage of the omnibus clause. The operation by a third person under such circumstances falls within the protection of the omnibus clause even where such operation is specifically forbidden by the named insured.

Id.

In concluding that Shazier did not have permission to use the rental car, the district court misunderstood and misapplied the difference between use and operation and apparently totally disregarded the meaning of consent or permission under Florida’s dangerous instrumentality doctrine. By doing so, the court construed the insurance contract against the insured and approved Geico’s use of a private third-party contract prohibiting unauthorized drivers from avoiding liability in contradiction of Florida’s substantive law as reflected in Susco and Roth. Geico’s policy defined “temporary substitute auto” as a vehicle not owned by the insured that is “temporarily used with the permission of the owner ... as a substitute for the owned auto.” Thus, although the insured does not actually own the car, Geico covers a substitute auto as if it were owned by the insured as long the real owner gave permission for its use. Avis entrusted the car to Shazier for profit, and Shazier rented the vehicle to use as a temporary substitute for her own disabled Ford Expedition. See Gov’t Emp. Ins. Co. v. Hughes, 184 Ohio App.3d 397, 921 N.E.2d 269, 274 (2009) (“[T]he policy in this case simply provides coverage when a vehicle that is not titled to the policyholder is being ‘temporarily used with the permission of the owner ... as a substitute for the owned auto.’ The only person that could be using the vehicle as a substitute for the owned auto would be the policyholder; thus, that same person is the one that must be using the vehicle ‘with the permission of the owner.’”). Accordingly, under the terms of Geico’s policy, Shazier had the permission of the owner of the vehicle, and the car became the insured’s “owned car” under the Geico policy at that moment. Sha-zier’s “owned car” by definition was being used with her permission at the time of the collision, and Geico cannot escape liability contrary to Florida law. This interpretation of the contract is consistent not only with our substantive law and our public policy, but also consistent with the standards for interpreting an insurance contract.
CONCLUSION
In light of the foregoing discussion, we quash the First District’s decision and direct that judgment be entered in favor of the insureds and injured parties. In addition, we decline to review the collateral issue asserted by Geico in its answer brief. See Bifulco v. Patient Bus. & Fin. Sen., Inc., 39 So.3d 1255, 1256 n. 3 (Fla.2010) (declining review of claim beyond scope of conflict).
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., dissents with an opinion, in which POLSTON, J., concurs.