[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15788

_____

D.C. Docket No. 1:07-cv-23044-CMA

ESPERANZA GARCIA,
as Personal Representative of the Estate of Paola Penafiel,

Plaintiff - Appellee,

versus

GEICO GENERAL INSURANCE COMPANY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 19, 2015)

Before WILSON and MARTIN, Circuit Judges, and HODGES,[*] District Judge.

WILSON, Circuit Judge:

_____

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

GEICO General Insurance Company (GEICO) appeals from a final judgment entered in favor of Esperanza Garcia, personal representative of the estate of Paola Penafiel, on Garcia's *Coblentz* bad faith claim against GEICO.[1] GEICO contends that the district court erred in denying the admission of evidence of the development of Florida law as it pertained to whether an insurance policy GEICO issued to Edgar Baena (Edgar) covered a vehicle collision involving Edgar and Penafiel. GEICO also argues that the district court improperly excluded evidence of earlier decisions of the district court rejecting the theory on which Garcia based her argument that coverage existed. After careful consideration of the parties' briefs and the records, we agree with GEICO and vacate the final judgment and remand.

## I.

Miguel Baena (Miguel) rented a car from Enterprise Rent-a-Car (Enterprise) on December 14, 2006. The rental agreement between Miguel and Enterprise expressly denied permission to anyone other than Miguel to drive the car. Under the agreement, if Miguel violated the provision, the agreement would terminate, and Enterprise would be entitled to seize the vehicle and/or report it as stolen to the

---

[1] *Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir. 1969). *Coblentz* agreements permit an insured to "enter into a reasonable settlement agreement with the [plaintiff] and consent to an adverse judgment for the policy limits that is collectable only against the insurer." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 900 (Fla. 2010). If a plaintiff wishes to recover in excess of the policy limits, the plaintiff must establish that the insurer acted in bad faith in wrongfully denying coverage. *Id.*

police.  When he rented the car, Miguel also purchased a collision damage waiver that would likewise terminate should anyone besides Miguel operate the vehicle.

Miguel and his brother, Edgar, went out for a night on the town.  Edgar drove the rental vehicle when the two decided to head home, despite the rental agreement's and collision damage waiver's provisions.  Edgar rear-ended Penafiel's vehicle, killing her.

Edgar had an automobile insurance policy (Policy) with GEICO at the time of the accident.  Speaking in general terms, the Policy covered Edgar for vehicle collisions wherein he was a driver so long as he drove his own vehicle or the vehicle of another with that person's consent.  Specifically, and as is relevant to this appeal, Edgar was entitled to coverage while driving another's vehicle where the "use [was] with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission."

Enterprise informed GEICO that Edgar did not have permission to use the rental car and of the express limitation on permission contained in the rental agreement.  Edgar never responded to GEICO's inquiries regarding whether he reasonably believed he had the owner's permission to use the vehicle.  GEICO concluded that it did not owe coverage on the accident because Edgar did not have Enterprise's permission to use the car, and there was no basis for suggesting that Edgar reasonably believed he had such permission.  GEICO conveyed its decision

to Edgar, Edgar's attorney, and counsel for the accident claimants by a certified return-receipt letter.

Garcia filed a complaint for wrongful death against Edgar in Florida state court. Rather than defending the action, Edgar entered into a *Coblentz* agreement with Garcia, stipulating to a $5 million judgment. The agreement provided that Garcia would not execute against Edgar. Garcia then filed a complaint against GEICO, alleging that GEICO acted in bad faith in denying coverage. GEICO removed to the United States District Court for the Southern District of Florida and filed a declaratory action in that court. GEICO sought a declaration that the policy did not cover the accident. The actions were consolidated and the bad faith action was stayed pending the outcome of a trial on the coverage issue. Garcia's theory at trial was that, under Florida law, a vehicle owner's permission to use a vehicle could be imputed to an insured third party where the initial permittee grants permission to the third party to use the vehicle. In other words, by permitting Miguel to drive the car, Enterprise implicitly extended permission to anyone else Miguel permitted to drive the car, including Edgar. In denying motions for summary judgment by both parties, the district court rejected this "implied consent" argument.

The first two trials resulted in mistrials. After the first, the district court directed a partial verdict for GEICO on the issue of whether Enterprise gave Edgar

4

permission to drive the car, "find[ing] as a matter of law that Enterprise did not consent to [Edgar's] use" of the rental car.[2]  The subsequent trials, then, considered only whether Edgar reasonably believed he had permission to drive the car.  After the third trial, the jury returned a verdict in GEICO's favor on that issue.  Garcia moved for judgment notwithstanding the verdict, which the district court denied.  The district court relied in part on *Geico Indem. Co. v. Shazier*, 34 So. 3d 42 (Fla. Dist. Ct. App. 2010), *quashed sub nom. Chandler v. Geico Indem. Co.*, 78 So. 3d 1293 (Fla. 2011),[3] which rejected the implied consent doctrine as a matter of law.  Accordingly, the verdict established that Edgar did not reasonably believe that he had permission to drive the car, and the district court entered judgment in GEICO's favor on the coverage issue, rendering the bad faith question moot.

Garcia appealed the judgment to this court.  During the pendency of the appeal, the Florida Supreme Court decided *Chandler*, which adopted the implied consent doctrine and quashed *Shazier*.  *See Chandler*, 78 So. 3d at 1299–1302.  Accordingly, we reversed the district court and remanded for proceedings applying the law as set out in *Chandler*.  *See Garcia v. Geico Gen. Ins. Co.*, 450 F. App'x 870, 873 (11th Cir. 2012) (per curiam).

---

[2] The district court also denied Garcia's motion for summary judgment, distinguishing Florida precedent that Garcia argued supported the implied consent doctrine.
[3] The order denying the motion for judgment notwithstanding the verdict was issued while *Shazier* was still good law.

5

On remand, the district court entered judgment on the coverage issue in Garcia's favor.[4]  The bad faith question was scheduled for a jury trial.  In his report and deposition, GEICO's expert witness addressed the nature of Florida law on implied consent at the time GEICO denied coverage, including the district court's orders rejecting implied consent prior to the appeal as well as the *Shazier* and *Chandler* decisions.  Garcia sought to exclude discussion of those decisions.  Initially, the district court sided with GEICO.  Before trial, Garcia again raised her objection to the evidence.  She cited *Harbison v. American Motorists Insurance Co.*, 636 F. Supp. 2d 1030 (E.D. Cal. 2009), to support the proposition that, because those decisions were issued after GEICO's coverage determination, they could not have affected the substance of the coverage dispute and GEICO's rationale for denying coverage, *see Robinson v. State Farm Fire & Cas. Co.*, 583 So. 2d 1063, 1068 (Fla. Dist. Ct. App. 1991) (listing "the substance of the coverage dispute or the weight of legal authority on the coverage issue" and "reasonable[ness] and legitima[cy]" as factors in considering bad faith (internal quotation marks omitted)).  Garcia also argued that admitting the evidence would constitute improper "bolstering" of the expert's testimony.  This time, the district court accepted Garcia's argument, ordering that GEICO's expert could not discuss any of the decisions.

---

[4] Because the district judge who had presided over the controversy prior to the appeal had been elevated to this court, a different judge handled the case on remand.

6

At trial, Garcia argued that, at the time GEICO denied coverage, Florida law had recognized the implied consent doctrine, that such law was well-settled, and that GEICO ignored that well-settled law when it denied coverage. After Garcia's expert testified on the subject, GEICO objected, asserting that Garcia had opened the door to evidence of the excluded decisions. The district court overruled the objection. Garcia later elicited testimony on cross-examination from GEICO's expert that the district court had, prior to the jury trial, determined coverage in Edgar's favor. The expert was not permitted to explain that that decision came only after *Chandler* was issued.

The jury found in Garcia's favor, and the district court entered judgment for Garcia. GEICO moved for a new trial, relying on the purportedly improper evidentiary exclusion. The district court denied that motion. This appeal followed.[5] For the reasons stated herein, we vacate the final judgment of the district court and remand for a new trial consistent with this opinion.

## II.

In diversity cases, "the admissibility of evidence in federal courts is governed by federal law." *Borden, Inc. v. Fla. E. Coast. Ry. Co.*, 772 F.2d 750, 754 (11th Cir. 1985). We review the exclusion of evidence for an abuse of discretion. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 556 (11th

---

[5] There was also a *Coblentz* issue for the jury that resulted in an additional trial subsequent to the jury verdict on bad faith. The issue is not before us.

Cir. 1998).  A district court abuses its discretion when it makes a legal error, and we review legal errors de novo.  *Id.*  The district court's evidentiary ruling here was oral, and the record does not contain much detail of the district court's consideration of the issue.  Based on the district court's use of the term "bolstering" in its order and the switch on the ultimate admissibility question after Garcia's citation to *Harbison*, it seems that improper bolstering and/or *Harbison* were the reasons for the ruling.  Both were legal errors, and the district court's ruling was thus an abuse of discretion.

## A.

We begin with the threshold for admissibility: relevance.  *See* Fed. R. Evid. 402.  GEICO argued that its legal conclusion that coverage did not apply here was a reasonable one based on existing Florida law, or at least that the issue was unclear.  It is clear that it is relevant to the reasonableness of GEICO's decision and the substance of the coverage dispute that the district court agreed with GEICO before the Florida Supreme Court reached the opposite conclusion.  *See Robinson*, 583 So. 2d at 1068 (stating that the insurer having a "reasonable and legitimate basis to deny coverage would be relevant" to bad faith where that reasonableness was based in part on an earlier order in the same litigation denying summary judgment to the insured on the coverage issue before a jury found in the insured's favor (internal quotation marks omitted)); *accord* Allan D. Windt, 2 Insurance

8

Claims and Disputes § 9:26A (6th ed. 2014) ("Case law can, in many circumstances, constitute evidence that the insurer's policy interpretation or understanding of its rights/obligations was reasonable.  Even if the insurer was unaware of the case law, or the case law post-dated the insurer's claim handling, the very existence of the case law (or simply the existence of a reasoned dissenting opinion) can constitute evidence that the insurer's analysis was at least reasonable—since an independent judge utilized the same analysis.").

*Shazier* also supports GEICO's contention that Florida courts did not clearly recognize the implied consent doctrine prior to *Chandler*, or that there was at least a reasonable basis for concluding that they did not.  And *Chandler* is relevant for the purpose of establishing at what point Florida law definitively recognized the implied consent doctrine and what caused this court to reverse the first judgment in GEICO's favor.[6]

**B.**

---

[6] *Chandler* described the implied consent doctrine as "long-established" and declared *Shazier* to be in conflict with previous decisions of the Florida Supreme Court.  *See Chandler*, 78 So. 3d at 1296.  Though the dissent persuasively maintained that rejection of implied consent did not conflict with previous Florida Supreme Court decisions, *see id.* at 1302–03 (Canady, J., dissenting) (recognizing that the previous Florida Supreme Court decisions imposed vicarious liability on rental car owners through Florida's dangerous instrumentality doctrine and did not establish or apply the implied consent doctrine), we must credit the Florida Supreme Court's legal conclusions regarding the law of that state, *see Towne Realty, Inc. v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1269 n.5 (11th Cir. 1988).  Nonetheless, *Chandler* at the very least clarified the doctrine, and it, in conjunction with *Shazier*, is indubitably probative of the reasonableness of GEICO's coverage denial.

Now that we have established the threshold requirement of relevance, we address the district court's bases for ordering exclusion. Contrary to the district court's implicit conclusion, *Harbison* does not hold that previous decisions in a given litigation are irrelevant to the bad faith question or that such decisions cannot otherwise be admitted as evidence on that issue. *See* 636 F. Supp. 2d at 1043. First, that order, *in denying the insurer's motion for summary judgment*, merely stated that a "prior decision in favor of [the insurer's] motion for summary judgment does not preclude a finding of bad faith." *Id.* In other words, the court only refused to give the prior decision there dispositive effect; it did not exclude evidence of those rulings from trial.[7] Second, the court refused to give such dispositive effect only after concluding that California law clearly provided for coverage under the circumstances, while Florida law here was, as discussed in this opinion, unclear prior to *Chandler*. *See id.* (distinguishing an opinion permitting admission of decisions coming after the insurer's coverage decision "because there, the court was deciding the reasonableness of an insurer's coverage decision in light of conflicting case law"). Finally, and relatedly, there was no indication, as there is here, that the prior decision in that case relied on precedent that was later abrogated, overruled, or clarified by intervening state court decisions. *See id.*

---

[7] The court did state that the prior decision was not "admissible evidence supporting the reasonableness of defendant's denial of coverage." *Harbison*, 636 F. Supp. 2d at 1043. However, that was merely dicta, as the order only disposed of a motion for summary judgment. *See id.* at 1033–34, 1045. Even if the statement were part of the decision's holding, it is not binding, and we do not find it persuasive.

10

The decision in *Harbison* and Garcia's argument partially depend on the proposition that an insurer cannot rely on court decisions coming into existence only after the conclusion that coverage does not exist.  We could not agree more.  It is quite obvious that it is temporally impossible to rely on then-non-existent decisions to reach a legal conclusion.  However, GEICO does not quibble with that proposition.  GEICO proffered the evidence because the agreement of a federal judge and three Florida appellate judges with GEICO's conclusion indicates, from an objective standpoint, that the conclusion was reasonable, considered existing law, and was reached in good faith.

The district court also seemed to indicate, and Garcia contends, that allowing the evidence would constitute improper bolstering.  A court may exclude evidence as improper bolstering when the purpose of the evidence is to vouch for a witness's credibility.  *See United States v. Bernal-Benitez*, 594 F.3d 1303, 1313–14 (11th Cir. 2010) (explaining improper bolstering in the context of an appeal of a criminal conviction).  To begin with, bolstering typically comes up in criminal cases.  Moreover, the evidence GEICO sought to admit said nothing about the expert witness's credibility.  Instead, it went to the heart of the issue: whether GEICO's denial of coverage was reasonable and supported by Florida law, or at least not in direct conflict with it.  The mere fact that it would have corroborated the expert's opinion does not mean that "the prestige of the government [was placed] behind

11

the witness, or . . . [that counsel for GEICO would have] indicat[ed] that information not before the jury support[ed] the witness's credibility."[8]  *See id.*

## C.

Garcia offers two alternative arguments for affirming the district court: (1) the exclusion was harmless, *see Hearn v. McKay*, 603 F.3d 897, 904 n.11 (11th Cir. 2010) (per curiam); and (2) the exclusion did not result in substantial prejudice to GEICO, *see Cynergy, LLC v. First Am. Title Ins. Co.*, 706 F.3d 1321, 1326 (11th Cir. 2013).  As to the first argument, Garcia contends that the exclusion was harmless because the jury found GEICO liable under the alternative theory of bad faith in handling the investigation of the claim, notifying of potential excess liability, taking steps to reduce potential excess liability, and attempting to settle. GEICO responds that these are not alternative theories of bad faith under Florida law; rather, they are only factors to be considered in reaching the ultimate determination of bad faith.  Assuming *arguendo* that Garcia is correct, we still doubt that the exclusion was harmless. Whether GEICO was under any duty to investigate, notify, take steps to reduce potential excess liability, or attempt to

---

[8] In fact, the Federal Rules of Evidence specifically contemplate the admission of this type of evidence when an expert testifies, even in cases where it might otherwise be inadmissible.  *See* Fed. R. Evid. 703 ("[I]f the facts or data [on which the expert relied] would otherwise be inadmissible, the [expert] may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."); Fed. R. Evid. 705 ("[A]n expert may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data.  But the expert may be required to disclose those facts or data on cross-examination.").

settle depends on whether any coverage existed.  *Cf. Fed. Ins. Co. v. Applestein*, 377 So. 2d 229, 231 (Fla. Dist. Ct. App. 1979) ("No obligation to defend the action, much less to pay any resulting judgment, arises when the pleading in question shows either the non-existence of coverage or the applicability of a policy exclusion.").  If the jury concluded that GEICO did not act in bad faith in denying coverage, that finding would heavily influence its verdict on the alternative charge.

Similarly, the exclusion substantially prejudiced GEICO.  A jury would no doubt find it exceedingly relevant that Florida law on implied consent was in a state of flux, or that a panel of Florida's First District Court of Appeal and a United States District Judge for the Southern District of Florida supported GEICO's conclusion regarding implied consent.  And the Florida Supreme Court's decision in *Chandler* would allow GEICO and its expert to explain to the jury how Florida law on implied consent became clear only after GEICO's coverage determination.  The exclusion, then, certainly "substantial[ly] influence[d] . . . the outcome of the case."  *See Hearn*, 603 F.3d at 904 n.11 (internal quotation marks omitted).

## III.

Ultimately, where the "weight of legal authority on the coverage issue" and the reasonableness of the coverage decision are at issue, *see Robinson*, 583 So. 2d at 1068, we would expect opinions considering, applying, and clarifying such legal authority to be relevant.  Because the evidence was relevant, and because any other

13

basis for exclusion raised by the district court or by Garcia is insufficient as a matter of law, the exclusion was an abuse of discretion.  We therefore vacate the final judgment and remand for a new trial consistent with this opinion.

**VACATED and REMANDED.**