IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

MARIANA GRACIA,

      Appellant,

v.

      Case No. 5D21-1456
      LT Case No. 2018-CA-000942-O

SECURITY FIRST INSURANCE COMPANY,

      Appellee.

_____/

Opinion filed September 9, 2022

Appeal from the Circuit Court
for Orange County,
Kevin B. Weiss, Judge.

Melissa A. Giasi, of Giasi Law, P.A.,
Tampa, for Appellant.

Angela C. Flowers, of Kubicki Draper,
P.A., Ocala, for Appellee.

PER CURIAM.

      Mariana Gracia appeals the trial court's grant of final summary

judgment in favor of Security First Insurance Company ("Security First"). The

trial court found Gracia had made affirmative misrepresentations regarding

the pre-loss condition of her property, warranting forfeiture of coverage under the concealment or fraud provision of her homeowner's insurance policy.  We reverse.

In 2016, Security First issued an insurance policy to Gracia for her home located in Orlando, Florida. The policy was effective from May 2016 to May 2017. Gracia reported a loss due to roof damage allegedly caused by a storm that occurred in April 2017. Security First investigated the claim and extended approximately $11,000 in coverage for damages. However, Gracia then submitted a sworn proof of loss, claiming more damages than what Security First had covered. After Security First denied the full amount, Gracia filed suit alleging breach of contract and seeking additional damages to cover roof repairs and interior water damage.

During her deposition, Gracia revealed that a home inspection had been performed in 2015, prior to her purchasing the property. When asked the results of the inspection, she stated, "Everything was good" and that the "roof was in good condition." After Security First obtained the 2015 inspection report, it amended its affirmative defenses to include the concealment or fraud provision of the policy, as the inspection report indicated that the property had roof and interior ceiling damage in 2015. The inspection report contained photographs revealing the damage and specifically noted roof

2

leaks around the chimney, water damage in the attic, and interior ceiling damage caused by water—areas consistent with those noted by Gracia in her instant claim.

Security First moved for summary judgment on several grounds but focused exclusively on its concealment or fraud defense at the summary judgment hearing. It argued that forfeiture of coverage was warranted because Gracia had made false material statements during her deposition concerning the pre-loss condition of her home. Gracia countered that to the best of her knowledge, the damages sought in her instant claim arose from the 2017 storm and were different than the damages reflected in the 2015 inspection report. She also argued that the existence of the inspection report did not automatically establish that she had made intentional misrepresentations.

The trial court agreed with Security First. In applying the new summary judgment standard, the court found that it was permitted to "weigh the credibility of the evidence presented," and in doing so, found that Gracia's explanation was not credible in light of the 2015 inspection report and its photographs of the property. As such, it found that Security First was entitled to summary judgment as a matter of law. This appeal followed.

The issue on appeal is whether, to justify forfeiture of coverage under the policy's concealment or fraud provision, Security First was required to establish that Gracia's statements regarding the pre-loss condition of her property were made with the intent to mislead. Our standard of review is de novo. Chandler v. Geico Indem. Co., 78 So. 3d 1293, 1296 (Fla. 2011) (noting de novo standard of review when trial court's summary judgment ruling turns on interpretation of insurance contract).

Because this case was decided under the new Florida Rule of Civil Procedure 1.510, summary judgment is appropriate when "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." In re Amends. to Fla. R. Civ. P. 1.510, 317 So. 3d 72, 75 (Fla. 2021) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The trial court interpreted this new standard as allowing it to weigh and judge the credibility of the evidence. While no longer an absolute prohibition—depending on the nature of the evidence—the general rule remains intact: credibility determinations and weighing the evidence "are jury functions, not those of a judge," when ruling on a motion for summary judgment. Anderson, 477 U.S. at 255; see also A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc., 900 F.3d 1270, 1289 (11th Cir. 2018) (noting that under federal summary judgment rule, "[t]he court does not weigh conflicting evidence or

4

determine the credibility of witnesses" (citations omitted)). This case is not an exception to that general principle.[1]

The insurance provision at issue provides:

> 3. Concealment or Fraud
>
> a. The entire policy will be void if, whether before or after a loss, any "insured" has:
>
> (1) Intentionally concealed or misrepresented any material fact or circumstance;
>
> (2) Engaged in fraudulent conduct; or
>
> (3) Made false material statements;
>
> relating to this insurance.

Gracia argues that where Security First relied upon subsection (3) of the concealment or fraud provision, it was required to meet its initial burden of establishing that her statements were made with an intent to mislead and were material. She contends there was no such showing and that the trial court effectively decided these fact questions when it granted summary judgment. We agree.

---

[1] Only when the record evidence blatantly contradicts a litigant's version of the facts will a court be allowed to weigh conflicting evidence or determine the credibility of a witness. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

First, it is important to highlight the distinction between misrepresentation during the insurance application process and misrepresentation in the post-loss context. With respect to the former, the law in Florida is clear: an insurer can later void a policy based on an insured's false statement without a showing of intent to mislead. See Privilege Underwriters Reciprocal Exch. v. Clark, 174 So. 3d 1028, 1031 (Fla. 5th DCA 2015); Universal Prop. & Cas. Ins. Co. v. Johnson, 114 So. 3d 1031, 1037 (Fla. 1st DCA 2013) ("[A] misrepresentation 'need not be fraudulently or knowingly made but need only affect the insurer's risk or be a fact which, if known, would have caused the insurer not to issue the policy or not to issue it in so large an amount.'" (citations omitted)).

But a different standard is applied to false statements in the post-loss context, requiring proof of intent to mislead, as the Third and Fourth District Courts recently held. See Vargas v. Safepoint Ins. Co., 333 So. 3d 752, 755–56 (Fla. 3d DCA 2022) (interpreting "false statement" in concealment or fraud provision of insurance policy as including element of intent); Anchor Prop. & Cas. Ins. Co. v. Trif, 322 So. 3d 663, 671 (Fla. 4th DCA 2021) ("[W]e hold that, for post-loss conduct, the policy requires proof of knowing or intentional fraudulent conduct by the insureds to trigger the application of the 'Concealment or Fraud' provision to void the policy."); see also Reyes v.

6

United Prop. & Cas. Ins. Co., 336 So. 3d 782 (Fla. 3d DCA 2022); Universal Prop. & Cas. Ins. Co. v. Quintero, 333 So. 3d 752 (Fla. 3d DCA 2022).

In Trif, the Fourth District interpreted a concealment or fraud provision identical to the one at issue here. 322 So. 3d at 666. In that case, the false statement at issue centered on the insureds' sworn proof of loss, which included an estimated repair cost that was inaccurate and inflated. Id. at 667–69. After discovering the inflated nature of the repair estimate, the insurer amended its affirmative defenses to include the concealment or fraud provision. Id. at 667. The case proceeded to trial, where the jury returned a verdict in favor of the insureds on the basis that the insureds did not intentionally misrepresent the facts or make false material statements. Id. at 669. The trial court denied the insurer's motion for judgment notwithstanding the verdict or for a new trial, finding that the issues of intent and materiality were properly submitted to the jury. Id. at 669–70.

On appeal, the Fourth District began its analysis by noting that the law "abhors forfeiture of insurance coverage . . . . 'especially where, as here, a forfeiture is sought after the happening of the event giving rise to the insurer's liability.'" Id. at 671 (quoting Johnson v. Life Ins. Co. of Ga., 52 So. 2d 813, 815 (Fla. 1951)). Addressing the element of intent, the Fourth District noted that "[m]ost 'concealment or fraud' clauses contain, or have been construed

7

to contain, a requirement that a post-loss concealment or misrepresentation be intentional." Id. at 673. The court relied in part on Florida Supreme Court precedent and a plain language analysis of the provision at issue. Id. at 673–76. First, the Fourth District noted that "[a] century ago, the Florida Supreme Court read into a policy the requirement that a post-loss misrepresentation be intentional to void the policy." Id. at 673 (citing U.S. Fire Ins. Co. v. Dickerson, 90 So. 613 (1921)). Second, the Trif court analyzed the ordinary meaning of the term "false statement" contained in the policy. Id. at 675. It noted that "false statement" was defined in Black's Law Dictionary as "an untrue statement knowingly made with the intent to mislead." Id. And to the extent the term "false statement" had two different meanings, the court found that the term should be construed against the drafter. Id.

Shortly after the Fourth District's decision in Trif, the Third District decided Vargas, which reinforced that intent is a required element when analyzing a concealment or fraud provision in the post-loss stage. See Vargas, 333 So. 3d at 755. Like in Trif, the Vargas court employed a plain language analysis of the term "false statement," agreeing with the Fourth District that the term includes an element of fraudulent intent. Id. (citing Trif, 322 So. 3d at 675). However, the Vargas court recognized the "difficulties" of its interpretation:

8

Of course, our interpretation is not without its own difficulties. First, as Judge Edward L. Artau points out in his principled and carefully reasoned dissent in Trif, "because subsection (1) [of the policy] already covers intentional misrepresentations, the majority's interpretation of the policy language would render subsection (3) to be superfluous or meaningless because it would do nothing more than repeat subsection (1) if we were to read an intent requirement into it." Judge Artau's observation cannot be denied. His interpretation of "false statements" as requiring no intent, however, presents the same problem.

As Judge Gross noted, no matter how one interprets the policy, "some portion of the 'Concealment or Fraud' provision will be rendered superfluous." If subsection (3) is read to dispense with an intent requirement as the Trif dissent suggests, then subsections (1) and (2)'s inclusion of an intent requirement are rendered superfluous: mere proof of incorrectness under subsection (3) would forfeit coverage thus eliminating any need for proof of intentional misrepresentation or fraud so prominently featured in subsections (1) and (2).

In these circumstances, where either of the competing interpretations will render some language a nullity, the rule of construction requiring avoidance of interpretations that make any language superfluous loses traction. The fault is not in the rule of construction but in the policy language. We therefore decline to apply the rule in a manner that defeats the common meaning of "false statement" and the other principles of construction discussed above. Thus, while recognizing the accuracy of Judge Artau's insight, we continue to interpret the reference to "false statements" in the "Concealment or Fraud" provision under review as requiring an element of fraudulent intent.

9

Id. at 755–56 (internal citations omitted). We agree with our sister courts that the element of intent is required in the post-loss context and now turn to the instant case.

Despite having maintained below that fraudulent intent was not required, Security First argues on appeal that affirmance is warranted because its evidence undoubtedly established Gracia's intent to mislead. Specifically, it maintains that, because Gracia was admittedly in possession of the 2015 inspection report before her deposition, her statements that "everything was good" and that the roof was in "good condition" must have been made with an intent to mislead, because that is the only conclusion one can reach upon comparing her statements to the inspection report. However, Gracia's affidavit filed in opposition to summary judgment stated that, to the best of her knowledge, the damages alleged in her instant claim arose from the April 2017 storm and were different than the damages detailed in the inspection report. While Security First contends that such allegations were insufficient to create a disputed fact, it still remains that Security First initially failed to meet its summary judgment burden of providing evidence of each element of its affirmative defense.[2] See Chaplin v. NationsCredit Corp., 307

---

[2] Although Trif and Vargas were decided after Security First had moved for summary judgment, that did not preclude Security First from asserting

10

F.3d 368, 372 (5th Cir. 2002) ("To obtain summary judgment, if the movant

bears the burden of proof on an issue because as a defendant he is asserting

an affirmative defense, he must establish beyond peradventure all of the

essential elements of the defense to warrant judgment in his favor."); see

also Blue Cross & Blue Shield of Ala. v. Weitz, 913 F.2d 1544, 1552 (11th

Cir. 1990) (noting that in summary judgment context, defendant raising

affirmative defense has initial burden of proof).[3]

Simply put, factual questions relating to fraudulent intent or state of

mind are generally not ripe for summary judgment determination.[4] See

---

that Gracia had knowingly and intentionally made false material statements during her deposition. See Trif, 322 So. 3d at 673 (recognizing that "[a] century ago, the Florida Supreme Court read into a policy the requirement that a post-loss misrepresentation be intentional to void the policy." (citing Dickerson, 90 So. at 618)).

[3] Security First relies on Mezadieu v. Safepoint Insurance Co., 315 So. 3d 26 (Fla. 4th DCA 2021). In that case, summary judgment was entered after the insurer established by unrefuted evidence that the insured had submitted a claim for $11,000 in damages the insured "clearly knew" were not caused by the subject loss. Id. at 27–30. Because the insured had "all but conceded" that her statements were false, it was not necessary to reach the issue of intent. Id. at 27–28. Here, there was no such concession of knowledge.

[4] As to the materiality of Gracia's statements, that, too, is generally a fact question reserved for the jury's resolution. Trif, 322 So. 3d at 672 ("The materiality of a misrepresentation is a question for the jury."); see also Lopes v. Allstate Indem. Co., 873 So. 2d 344, 347 (Fla. 3d DCA 2004) ("The question of whether an insured has made a material misrepresentation is a question for the jury to determine.").

Bowman v. Barker, 172 So. 3d 1013, 1017 (Fla. 1st DCA 2015) (finding that material issues of fact as to vendor's intent precluded summary judgment on purchaser's fraudulent misrepresentation claim); Fleming v. Peoples First Fin. Sav. & Loan Ass'n, 667 So. 2d 273, 274 (Fla. 1st DCA 1995) (noting that fact issues relating to intent generally do not lend themselves to summary judgment). Accordingly, we reverse the trial court's grant of summary judgment in favor of Security First on its concealment or fraud affirmative defense.

REVERSED AND REMANDED.

EVANDER and COHEN, JJ., concur.
EISNAUGLE, J., concurs in result only, with opinion.

EISNAUGLE, J., concurring in result only, with opinion.

I agree we must reverse the final summary judgment in this case. However, I find it unnecessary to decide whether a false statement, as used in the concealment or fraud provision in the insurance policy, requires proof of intent.

The trial court granted summary judgment finding that Gracia made material false statements by testifying that "[e]verything was good" and the "[r]oof was in good condition" when asked about the results of a home inspection report. However, Security First did not meet its summary judgment burden to establish that there is no "genuine dispute" that these statements were false. See Fla. R. Civ. P. 1.510(a). Given their context, these statements were too generalized and vague to establish falsity for purposes of summary judgment. This is especially so considering the purpose of a home inspection report and the ill-defined questions to which Gracia was responding. Importantly, on our record, the inspection report itself does not establish, via its descriptions or its difficult-to-decipher photographs, that these deposition statements were false.